## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| TRI-STATE TRUCK INSURANCE, LTD., *et al.*, | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | Case No. 09-4158-SAC |
| FIRST NATIONAL BANK OF WAMEGO, | ) ) ) ) | |
| Defendant. | ) | |

### ORDER

This matter comes before the Court upon Plaintiffs' Motion to Stay (Doc. 26), Motion to Modify Scheduling Order Deadlines (Doc. 33), and Motion for Protective Order (Doc. 35). The motions are fully briefed, and the Court is prepared to rule. For the reasons stated below, the Court denies Plaintiffs' Motion to Stay, grants Plaintiffs' Motion to Modify Scheduling Order Deadlines, and grants in part and denies in part Plaintiffs' Motion for Protective Order.

**I.  Background**

Plaintiffs filed this action on December 15, 2009, seeking a declaratory judgment against Defendant First National Bank of Wamego ("Defendant" or "FNB Wamego") arising from two commercial loan agreements entered into between Plaintiffs and Aleritas Capital Corporation ("Aleritas").[1] Aleritas purportedly funded the subject loans by selling participation interests in the loans to Defendant and a number of other banks ("Participating Lenders").[2]

---

[1] Compl. for Declaratory J. (Doc. 1).

[2] *See id*. ¶ 18; Def. First National Bank of Wamego's Answer and Countercl. to Pl.'s Compl. (Doc. 3) at 16 ¶ 9.

In a prior lawsuit filed in Pennsylvania, Plaintiff sued Aleritas and Brooke Capital Advisors, Inc. ("BCA") alleging Aleritas and BCA committed fraud in inducing Plaintiffs to enter into the subject loans ("Pennsylvania action").[3] Plaintiffs obtained a default judgment rescinding the subject loans and were awarded damages in the amount of $1,756,619.18.[4] In the instant suit, Plaintiffs seek a declaration and judgment that they owe no further obligations to Defendant or any other Participating Lender under the subject loans because the loans have been rescinded.[5]

Defendant denies the judgment entered against Aleritas is valid.[6] It asserts service was defective because Plaintiffs served a former agent for service of process, with full knowledge that the former agent was no longer Aleritas' agent for process.[7] Defendant also asserts Plaintiffs improperly failed to join it – the real party in interest – in the action.[8] Defendant has sought to intervene in the Pennsylvania action and to vacate the default judgment. The court in the Pennsylvania action has been fully briefed on the parties' respective positions, and Defendant's motion was heard on June 22, 2010. The Pennsylvania court, however, has not yet rendered a decision.

In the instant suit, Defendant filed a counterclaim alleging Plaintiffs have defaulted on the

---

[3] Compl. for Declaratory J. (Doc. 1) ¶ 23 & Ex. H.

[4] *Id.*

[5] *Id.* ¶ 26.

[6] Def. First National Bank of Wamego's Answer and Countercl. to Pl.'s Compl. (Doc. 3) at 11–12 ¶ 26.

[7] *See id.*; Def. First National Bank of Wamego's Opp'n to Mot. to Stay (Doc. 31) at 3.

[8] Def. First National Bank of Wamego's Answer and Countercl. to Pl.'s Compl. (Doc. 3) at 11–12 ¶ 26.

2

loans by not making scheduled payments when due. Defendant also seeks a declaratory judgment that (1) Defendant and the other Participating Lenders are third-party beneficiaries under the loans and may enforce Plaintiffs' obligations; (2) Plaintiffs have no personal claims or defenses preventing Defendant from enforcing the obligations under the loans; (3) Plaintiffs defaulted on the loans; (4) Plaintiffs' obligations under the loans are owed to Defendant and the other Participating Lenders; and (5) all payments due and owing on the loans are due to Defendant.[9]

## II. Analysis

### A. Motion to Stay

The district court has the inherent power to stay proceedings.[10] "'[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with the economy of time and effort for itself, for counsel, and for litigants.'"[11] Although the decision to grant a stay is within the district court's discretion, the Tenth Circuit has cautioned that the "right to proceed in court should not be denied except under the most extreme circumstances."[12] In exercising this power, the court "must weigh competing interests and maintain even balance."[13]

As discussed above, Plaintiffs initiated this action based upon the judgment entered in the

---

[9] *Id.* at 18.

[10] *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936); *Kittel v. First Union Mortgage Corp.*, 303 F.3d 1193, 1194–95 (10th Cir. 2002).

[11] *Kittel*, 303 F.3d at 1194–95 (quoting *Landis*, 299 U.S. at 254).

[12] *Commodity Future Trading Comm'n v. Chilcott Portfolio Mgmt., Inc.*, 713 F.2d 1477, 1484 (10th Cir. 1983) (citations omitted).

[13] *Kittel*, 303 F.3d at 1194–95.

3

Pennsylvania action rescinding the subject loans. Since this action was filed, Defendant has attempted to intervene and set aside that judgment. The court in the Pennsylvania action has not yet ruled upon Defendant's motion to intervene and set aside the judgment, and it is not clear when those issues will be resolved and whether any additional litigation will be necessary. Thus, it is not clear whether the judgment in the Pennsylvania action will stand. Plaintiffs request this case be stayed pending final resolution of the Pennsylvania action.

Defendant agrees there is merit to waiting for a decision in the Pennsylvania action before litigating Plaintiffs' claim in this case because if the default judgment is vacated, then Plaintiffs have no basis for the current suit. Defendant, however, argues a stay should not extend to its counterclaim because its counterclaim is based upon Plaintiff's purported failure to pay the loans, not the outcome of the Pennsylvania action.

As an affirmative defense, Plaintiffs contend there was no breach because the loans have been rescinded pursuant to the judgment in the Pennsylvania action.[14] Plaintiffs argue they cannot be in breach of loans that have been rescinded and do not exist. Thus, Plaintiffs argue the outcome of the Pennsylvania action affects all of the claims in this action.

In *Fifth Third Bank v. Canyon Crest Insurance Services, Inc.*, the court faced a similar decision whether to stay a case arising out of loans made by Aleritas.[15] In that case, Plaintiff Fifth Third Bank filed suit against seventeen defendants, seeking declaratory judgment and judgment in satisfaction of various loans upon which defendants allegedly defaulted.[16] Defendants were

---

[14] Answer to Def. First National Bank of Wamego's Countercl. (Doc. 8) ¶ 26.

[15] *See Fifth Third Bank v. Canyon Crest Ins. Servs., Inc.*, No. 09-2440-CM, 2010 WL 525774 (D. Kan. Feb. 10, 2010).

[16] *Id.* at *1.

4

individuals and businesses who purchased insurance agencies from and financed them through subsidiaries of Brooke Corporation, including Aleritas.[17] By way of assignment or otherwise, a number of the loans were held by plaintiff Fifth Third Bank.[18] In a separate lawsuit, defendants had sued Aleritas, seeking a declaration that the loans were cancelled because of Aleritas' fraud in making the loans.[19] Defendants sought a stay in the action brought by Plaintiff Fifth Third Bank until their case against Aleritas was resolved.[20] The Court denied the motion to stay because Fifth Third Bank's claims against defendants did not depend upon resolution of defendants' fraud claims against Aleritas and because defendants did not make out a clear case of hardship or inequity.[21]

Similar to *Fifth Third Bank v. Canyon Crest Insurance Services, Inc.*, Plaintiff has not demonstrated Defendant's counterclaim depends upon resolution of the Pennsylvania action. Plaintiff assumes a default judgment in the Pennsylvania action is binding in this case. It is not clear, however, whether the default judgment, if it were allowed to stand, would be binding on Defendant or have a preclusive effect on Defendant's counterclaim.[22] It is also not clear whether the fraud alleged against Aleritas and BCA in the Pennsylvania action would defeat Defendant's counterclaim if Defendant were found to be a third-party beneficiary under the loans. In short, the Court does not have sufficient information to conclude that resolution of the Pennsylvania action

---

[17] *Id.*

[18] *Id.*

[19] *Id.* at *2.

[20] *Id.* at *1.

[21] *Id.* at *2.

[22] *See McGill v. Southwark Realty Co.*, 828 A.2d 430, 434 (Pa. Commw. Ct. 2003).

would impact Defendant's counterclaim or that Plaintiffs would be unduly prejudiced by this case moving forward at this time. As the moving party, Plaintiffs have not met their burden to show this case is an "extreme circumstance" warranting a stay. If at some time it appears that Defendant's counterclaim cannot be fully litigated until the validity of the Pennsylvania judgment has been resolved, the Court may take up the issue again upon motion.

### B. Motion to Modify Scheduling Order Deadlines

Plaintiffs also move to modify the deadlines for the close of discovery, preparation of a proposed pretrial order, the holding of a final pretrial conference, and the filing of dispositive motions. Plaintiffs request the above scheduling order deadlines "be extended so that additional time is granted to complete the deadlines from the point in time of the Court's order on the motion to stay."

Whether to modify the Scheduling Order is within the sound discretion of the Court.[23] Considering the procedural posture of this case, the Court finds good cause exists to modify the Scheduling Order. Plaintiffs filed their Motion to Stay on May 27, 2010, forty-five days before the close of discovery. Therefore, the Court will extend the above referenced deadlines for a period of approximately forty-five days as follows:

1. All discovery shall be commenced or served in time to be completed by **August 31, 2010**.[24]

2. All potentially dispositive motions (e.g., motions for summary judgment) shall be filed by **October 4, 2010**.

---

[23] *Adams v. Goodyear Tire & Rubber Co.*, 184 F.R.D. 369, 372 (D. Kan. 1998).

[24] Discovery was to have closed on July 12, 2010. Scheduling Order (Doc. 12).

3. Pursuant to Fed. R. Civ. P. 16(d), a final pretrial conference is scheduled for **September 15, 2010 at 3:30 p.m.**, in the U.S. Courthouse, Room 470, 444 SE Quincy, Topeka, Kansas. No later than **September 8, 2010**, defendant shall submit the parties' proposed pretrial order to the Court.

**C. Motion for Protective Order**

Plaintiffs also move for a protective order extending the time in which to respond to certain outstanding written discovery until thirty (30) days after the Court's ruling on the motion to stay.

Fed. R. of Civ. P. 26(c) provides that the court, upon a showing of good cause, may make any order which justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense . . ." including specifying the time and place of discovery.[25] Rule 26(c) "confers broad discretion on the trial court to decide when a protective order is appropriate and what degree of protection is required."[26] The trial court is in the best position to weigh fairly the competing needs and interests of the parties affected by discovery.[27] The unique character of the discovery process requires the trial court to have substantial latitude to fashion protective orders.[28] The party seeking a protective order has the burden to show good cause for it.[29] To establish good cause, the party must submit "a particular and specific demonstration of fact, as

---

[25] Fed. R. Civ. P. 26(c)(1).

[26] *Seattle Times Co. v. Rhinehart,* 467 U.S. 20, 36 (1984).

[27] *Id.*

[28] *Id.*

[29] *Reed v. Bennett*, 193 F.R.D. 689, 691 (D. Kan. 2000).

7

distinguished from stereotyped and conclusory statements."[30]

On May 17, 2010, Defendant propounded written discovery on Plaintiffs, serving interrogatories, requests for documents, and requests for admissions.[31] On June 7, 2010, Defendant served additional requests for production of documents.[32]

Plaintiffs appear to be essentially seeking an extension of time in which to respond to Defendant's discovery requests. Despite that Plaintiffs' motion is directed at the timing of responding to discovery, Plaintiffs devote the majority of their moving brief to arguing the requested discovery is "repetitive of issues currently being considered by the court in the underlying lawsuit . . ." and may be irrelevant once the issues are fully resolved in the underlying action. Thus, they argue they have demonstrated "annoyance, embarrassment, oppression, or undue burden or expense."

The Court has reviewed some of the interrogatories, requests for documents, and requests for admissions served by Defendant on May 17, 2010.[33] Although some of these requests potentially relate to issues being considered in the Pennsylvania action, the majority relate to Plaintiffs' allegations and contentions in their Complaint in this case. Plaintiffs have not demonstrated how these discovery requests are annoying, embarrassing, oppressive, or unduly burdensome.

Additionally, the Court cannot determine whether the discovery propounded by Defendant

---

[30] *Gulf Oil Co. v. Bernard*, 452 U.S. 89, 102 n.16 (1981).

[31] Certificate of Service (Doc. 25).

[32] Certificate of Service (Doc. 30).

[33] Some of these discovery requests were attached to Plaintiffs' Motion to Stay. *See* Doc. 26, Exs. C, D, & E. Plaintiffs have not provided the discovery requests served on June 7, 2010.

is truly duplicative at this point. For example, Plaintiffs object to any discovery relating to whether service of process on Aleritas was proper. Although Defendant has sought to intervene in the Pennsylvania case and strike the default judgment, the Pennsylvania court might resolve that issue without ever reaching the question of whether process on Aleritas was proper. At this point, the Court cannot determine whether or not this will be an issue in this case.

The Court understands Plaintiffs have requested a stay, in part, to better define the scope of discovery. However, Plaintiffs have not demonstrated the propounded discovery is annoying, embarrassing, oppressive, or unduly burdensome just because it might overlap with some of the discovery in the Pennsylvania action. If Plaintiffs' responses are based upon information or documents provided in the Pennsylvania action, then Plaintiffs may simply point to the specific information or documents already in Defendant's possession.

D. Kan. R. 26.2 provides that the filing of a motion for protective order stays the discovery at which the motion is directed pending order of the court. Here, Defendant served its First Set of Interrogatories, First Set of Requests for Production, and First Set of Requests for Admissions on May 17, 2010.[34] Plaintiffs' responses were due within thirty days after being served, or June 16, 2010.[35] Plaintiffs filed the instant motion on June 15, 2010. Plaintiffs have not met their burden to justify a Protective Order. The Court, however, will extend the deadline for Plaintiffs' to respond to Defendant's First Set of Interrogatories, First Set of Requests for Production, and First Set of Requests for Admissions. Plaintiffs' responses to the above discovery requests must be served by July 22, 2010, within seven (7) days from the date of this Order.

---

[34] Mot. to Stay (Doc. 26), Exs. C, D, & E.

[35] Fed. R. Civ. P. 33(b)(2); 34(b)(2)(A); 36(a)(3).

On June 7, 2010, Defendant served a Second Set of Requests for Production upon Plaintiffs.[36] Plaintiffs' responses were therefore due on or before July 7, 2010. Plaintiffs filed the instant motion on June 15, 2010, which the Court denies for the reasons stated above. Plaintiffs shall respond to Defendant's Second Set of Requests for Production on or before August 5, 2010, within twenty-one (21) days from the date of this Order.

Accordingly,

**IT IS THEREFORE ORDERED** that Plaintiffs' Motion to Stay (Doc. 26) is hereby denied.

**IT IS FURTHER ORDERED** that Plaintiffs' Motion to Modify Scheduling Order Deadlines (Doc. 33) is hereby granted.

**IT IS FURTHER ORDERED** that Plaintiff's Motion for a Protective Order (Doc. 35) is hereby granted in part and denied in part.

**IT IS SO ORDERED.**

Dated this 15th day of July, 2010, at Topeka, Kansas.

s/ K. Gary Sebelius  
K. Gary Sebelius  
U.S. Magistrate Judge

---

[36] Certificate of Service (Doc. 30).