IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

TRI-STATE TRUCK INSURANCE, LTD.,
TST, LTD., and ANDREW B. AUDET,

    Plaintiffs,

v.                                    No. 09-4158-SAC

FIRST NATIONAL BANK OF WAMEGO,

    Defendant.

MEMORANDUM AND ORDER

This declaratory judgment case comes before the court on cross motions for summary judgment filed by all parties.[1] Intervenor-Defendant, The Gibson Family Limited Partnership, has adopted and incorporated the motion for summary judgment and supporting memoranda filed by Defendant First National Bank of Wamego. Dk. 95. Also before the court is Plaintiffs' motion to strike portions of an affidavit relied upon by Defendant First National Bank of Wamego (FNBW). Dk. 85.

**I. Summary Judgment Standard**

A court grants a motion for summary judgment under Rule 56 of the Federal Rules of Civil Procedure if a genuine issue of material fact does not exist and if the movant is entitled to judgment as a matter of law. The court is to determine "whether there is the need for a trial-whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be

---

[1]The Court has examined its jurisdiction over this declaratory judgment case and finds it appropriate. *See Jordan v. Sosa*, __ F.3d __ (10th Cir. July 20, 2011); *Columbian Financial Corp. v. BancInsure, Inc.*, __ F.3d __ (10th Cir. June 21, 2011).

resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). "Only disputes over facts that might affect the outcome of the suit under the governing law will ... preclude summary judgment." *Id.* There are no genuine issues for trial if the record taken as a whole would not persuade a rational trier of fact to find for the nonmoving party. *Matsushita Elec. Indust. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

"Cross-motions for summary judgment are to be treated separately; the denial of one does not require the grant of another." *Buell Cabinet Co. v. Sudduth*, 608 F.2d 431, 433 (10th Cir. 1979). To the extent the cross-motions overlap, however, the court addresses the legal arguments together. Where the parties file cross motions for summary judgment, the court is "entitled to assume that no evidence needs to be considered other than that filed by the parties, but summary judgment is nevertheless inappropriate if disputes remain as to material facts." *James Barlow Family Ltd. Partnership v. David M. Munson, Inc.*, 132 F.3d 1316, 1319 (10th Cir. 1997), *cert. denied*, 523 U.S. 1048 (1998).

## II. Uncontested Facts

Plaintiff Tri-State Truck Insurance, Ltd. ("Tri-State") is a business entity organized in the State of Pennsylvania. Plaintiff TST, Ltd. ("TST") is a business entity organized in the State of North Dakota. Plaintiff Andrew B. Audet is an individual residing in the State of Pennsylvania, and at all times relevant was the Chairman, CEO, and sole stockholder of Plaintiffs Tri-State and TST. Defendant First National Bank of Wamego (FNBW) is a Kansas banking institution with its principal place of business in Wamego, Kansas. Intervenor-Defendant, The Gibson Family Limited Partnership, is a

2

participating lender.

On June 30, 2006, Plaintiff Tri-State entered into a "Commercial Loan Agreement" ("CLA") along with an "Addendum to Commercial Loan Agreement" ("CLA Addendum") of the same date (collectively "the original CLA"). Under the original CLA, Tri-State was the "borrower" and Brooke Credit Corporation was the "lender." Brooke Credit Corporation later became known as Aleritas. Under the original CLA, Aleritas loaned Tri-State $8,216,000.00, which was to be repaid over time with interest ("Loan No. 5483"). Tri-State received the loan proceeds, promised to repay the principal at the prescribed interest rate in monthly installments, and agreed to comply with all the loan terms and covenants in Loan 5483. In connection with that loan, and on that same date, Plaintiff Audet and Aleritas entered into a Guaranty.

 Also on June 30, 2006, Plaintiff Audet and Aleritas entered into a separate loan, as evidenced by a promissory note and a "Stock Pledge Agreement," whereby Aleritas loaned $436,000.00 to Audet. ("Loan No. 5484"). Audet received the loan proceeds, promised to repay the principal at the prescribed interest rate in monthly installments, and agreed to comply with all the loan terms and covenants in Loan 5484.

When Plaintiffs entered into the Loans,[2] they dealt only with Aleritas and not with any participating banks. Plaintiffs understood at that time that Aleritas would often sell participation interests in loans it originated, but Plaintiffs did not know what percentage of their loans might be participated by Aleritas, or who the participating entities might be.

On or about the date of the Loans, various participating lenders entered into

_____

[2]The Court collectively refers to Loan No. 5483 and Loan No. 5484 as "the Loans."

Participation Certificates and Agreements with Aleritas, whereby each participating lender acquired an interest in Loan Nos. 5483 and/or 5484. FNBW purchased an 8.520% participating interest in Loan No. 5483, but did not receive a complete set of the loan documents relating to its loan participation until two or three days after that purchase. Other participating lenders, including the Gibson Family Limited Partnership, also purchased participating interests in Loan No. 5483. Two participating banks purchased participating interests in Loan No. 5484. Initially, the banks collectively participated in approximately 95% of the Loans.

Prior to the closing of the Loans on June 30, 2006, Aleritas represented to the potential participating lenders that it would retain 5% of Loan No. 5483 to show its support of the transaction. Less than six weeks after the loan closed, Aleritas, unbenownst to the participating lenders, sold the 5.025% ($415,000) stake of that loan which it had initially retained, making 100% of the Loans participated.

On or about January 19, 2007, Plaintiff Audet and Aleritas entered into a second "Stock Pledge Agreement" in which the stock of TST was pledged to secure Audet's obligation under the promissory note of June 30, 2006. Also in January of 2007, a "Second Addendum to Commercial Loan Agreement" was executed, which added Plaintiff TST to the list of borrowers under the original CLA, making the terms of the original CLA applicable to Plaintiff TST.

Aleritas acted as the administrator for the Loans until September 12, 2008. As administrator, Aleritas promised the participating lenders that it would, among other things, collect payments from Plaintiffs and remit to the participating lenders their respective percentages of the payments and any shared borrowers' fees. In the fall of

2008, Aleritas experienced financial difficulties, and discontinued some or all of its normal business operations.[3] On September 12, 2008, by way of an Assignment and Assumption Agreement, Aleritas assigned the payment processing loan administration duties on the Loans to FNBW. Neither the Participation Agreements nor a pro rata list of participating lenders was attached to the Assignment and Assumption Agreement.

That same day, Plaintiffs acknowledged and consented to that assignment, without having seen a list of participating lenders or their Participation Agreements, and authorized FNBW to initiate electronic funds withdrawals for Plaintiffs' monthly loan payments on the Loans. Plaintiffs did not see the Participation Certificate terms until discovery in this case, and did not know that FNBW had any interest in the Loans until September of 2008, when it received a letter saying that Aleritas was transferring the "payment servicing" of the Loans to FNBW, with whom it had "partnered" "to ensure quality payment processing." Dk. 74, Exh. 112. That same letter advised Plaintiffs that the Loans had "not been transferred or sold by Aleritas." The parties agree that Aleritas has not to date sold or transferred the Loans, but has sold participation interests in them.

Throughout the life of the Loans, Aleritas was "the lender" as defined and identified in the subject loan documents. Under Loan No. 5484, the term "Loan Documents" includes:

> ... all documents and instruments (including, without limitation, promissory notes, loan agreements, security agreements, guaranties and stock pledge agreements) which evidence and/or secure any obligations of Borrower or any of the

---

[3]The parties dispute how to characterize this event and disagree whether Aleritas actually closed its doors, but agree that Aleritas stopped doing business as usual**.**

Guarantors to Lender.

This definition includes the Commercial Loan Agreement, the Addendum to Commercial Loan Agreement, the Second Addendum to Commercial Loan Agreement for Loan No. 5483, the Promissory Note, the June 30, 2006 Stock Pledge Agreement, and the Jan.19, 2007 Stock Pledge Agreement for Loan No. 5484, but does not include the Participation Certificates.

Plaintiffs made payments on the Loans through November of 2009, and timely provided all required reports under the Loans until December 14, 2009, first to Aleritas, then to FNBW, after Aleritas' assignment to FNBW. On December 14, 2009, a Pennsylvania court rescinded the Loans, finding they had been procured by Aleritas' fraud, as noted below. The parties agree that but for the judgment of rescission in the Pennsylvania case, Plaintiffs would still be performing under the Loans.

### The Pennsylvania Action

On September 23, 2009, Plaintiffs filed an action in Bucks County, Pennsylvania[4] against Aleritas and Brooke Capital Advisors, Inc. (BCA).[5] The suit alleged breach of contract against BCA, fraud by Aleritas and BCA in inducing the Plaintiffs to enter into Loan Nos. 5483 and 5484, and negligent misrepresentation against Aleritas and BCA. Plaintiffs did not notify FNBW or any other participating lenders about the lawsuit before or during its pendency, and none of them was named as a party. Neither the Loan documents nor any other documents require Plaintiffs to give notice of that action to any

---

[4]Bucks County Court of Common Pleas, Case No. 2009-10141-35.

[5]The parties do not explain BCA's role in the case, thus the Court views it as immaterial.

participating lender. When neither Aleritas nor BCA appeared in the case, Plaintiffs

obtained a judgment by default on October 30, 2009.

On December 14, 2009, the Pennsylvania case was tried on the issue of

damages. Defendants Aleritas and BCA again failed to appear, and Plaintiffs introduced

into the record the sworn testimony of Plaintiff Audet. On December 14, 2009, the

Pennsylvania order specifically determined that the Loans "were procured by fraud."

The Court entered a judgment of rescission of the Loans, and of "any and all loan

documents of any kind under [the Loans], including but not limited to any Loan

Addendum, Modifications, Stock Pledge Agreements, Security documents, UCC

Statements, Loan Obligations or Guarantys." Dk. 74, Exh. 106. The Court also awarded

monetary damages against Aleritas and BCA in the amount of $1,756, 619.18 plus

costs, for fraud in the inducement. No judgment was entered against FNBW or any

other participating lender, as none was a party to the Pennsylvania action.

The day after the Pennsylvania judgment of rescission, Plaintiffs filed this

declaratory judgment action in Kansas, seeking a declaration that they owe no

obligations to FNBW or any other participating lenders since the Loans have been

rescinded. Ten days after the Pennsylvania order (December 24, 2009), and soon after

FNBW learned of the Pennsylvania order, FNBW filed a petition to intervene in the

Pennsylvania case and to open or strike the default judgment. After eight months of

litigation between Plaintiffs and FNBW, the Pennsylvania court denied FNBW's petition

to intervene as untimely since it was filed at a time the case was no longer pending.

FNBW did not appeal that order, nor did anyone appeal the Pennsylvania default

judgment of rescission, which was filed and registered as a foreign judgment in Kansas

on September 3, 2010.

**The present motions**

Plaintiffs seek a declaratory judgment that they own no obligation to FNBW or to any other participating lender on the Loans. FNBW seeks summary judgment on its counterclaim that Plaintiffs breached their contract by defaulting on the Loans by failing to pay FNBW monthly installments after December 2009, the date of the Pennsylvania judgment. FNBW contends action that Plaintiffs Tr-State and TST owe $6,761, 434.62 in principal, with accrued interest of $473, 763.53 on Loan 5483, and interest accruing in the amount of $1,435.65 per diem. FNBW further contends that Plaintiff Audet owes $306,620.42 in principal, with accrued interest of $21,484.42 on Loan 5484, and interest accruing in the amount of $65.10 per diem.

**III. Plaintiffs' motions for summary judgment**

**A. Effect of Pennsylvania judgment**

The primary issue presented by Plaintiffs' motions for summary judgment is what effect the Pennsylvania judgment of rescission has on the parties in this case. Plaintiffs contend, generally, that because the loan contracts which underlie the Participation Agreements were rescinded in December of 2009, Plaintiffs were relieved of all obligations which accrued by virtue of those contracts, including any obligations to participating lenders. FNBW and The Gibson Family Limited Partnership, as a participating lenders, contend that the Pennsylvania judgment has no effect on them since they were not parties to that action and had no notice of it.

Initially, the Court finds it helpful to clarify two matters. First, the parties dispute

whether the Pennsylvania judgment itself already determined FNBW's rights or duties

with respect to the Loans. The Court finds, based on the plain language of that

judgment, that the judgment and order did not do so, but instead left that issue for this

Court's resolution. The Pennsylvania court's memorandum and order states, in pertinent

part:

> This Court has not entered any Order regarding Wamego's[6] rights, duties, or obligations with regard to commercial Loan Nos. 5483 or 5484. It is unclear from the evidentiary record before this Court if Wamego has an ownership interest or other interest in Loan Nos. 5483 and 5484. Wamego has not presented any evidence in support of its contention that it can raise a defense to the finding that defendants were liable for breach of contract, fraud in the inducement, and negligent misrepresentation. Wamego has stated in its pleadings and on the record that it is concerned that the judgment entered against defendants in this action will negatively affect Wamego's ability to defend its interests in the Declaratory Judgment action filed in the U.S. District Court
> ...
> Even if the action was considered to be pending, Wamego has failed to demonstrate at this juncture to this Court the factual basis for its argument that the judgment against defendants would impose liability upon Wamego, or affect its own legally enforceable interest in Loan Nos. 5483 and 5484, and therefore intervention is not permitted under Pa.R.Civ.P. 2327(1) or (4).
> ...
> We make no finding as to the merits of any claims Wamego has raised with respect to its ownership interest in Loan Nos. 5483 and 5484, or any other legally enforceable right arising out of said loans, and find that this Opinion and Order are without prejudice to Wamego raising these issues in the Declaratory Judgment action filed in the United States District Court for the District of Kansas.

Dk. 74, M & O, Exh. 119.

Similarly, the Order, dated July 29, 2010, specifically found:

> ...that the U.S. District Court of the District of Kansas is the more appropriate Court to determine Wamego's rights, obligations, and duties vis-a-vis Loan Nos. 5483 and 5484, in the Declaratory Judgment action already filed and pending. This Order is ... without prejudice to Wamego's right to litigate its ownership,

---

[6]"Wamego" is FNBW.

rights, obligations and duties vis-a-vis Loan Nos. 5483 and 5484 in the U.S. District Court of the District of Kansas.

Dk. 74, Exh. 120.

Secondly, the Court notes for purposes of clarification that some of the traditional preclusion theories are not alleged to generally apply in this case. By "preclud[ing] parties from contesting matters that they have had a full and fair opportunity to litigate," the doctrines of res judicata and collateral estoppel protect against "the expense and vexation attending multiple lawsuits, conserv[e] judicial resources, and foste[r] reliance on judicial action by minimizing the possibility of inconsistent decisions." *Montana v. United States*, 440 U.S. 147, 153-154 (1979). The Supreme Court of Pennsylvania has explained that res judicata: "bars a later action on all or part of the claim which was the subject of the first action. Any final, valid judgment on the merits by a court of competent jurisdiction precludes any further suit between the parties or their privies on the same cause of action." *Balent v. City of Wilkes-Barre*, 542 Pa. 555, 563, 669 A.2d 309, 313 (1995)).[7] Here, res judicata is inapplicable because as to FNBW because it was not a party to, and is not alleged to be in privity with a party to, the Pennsylvania action.[8]

_____

[7]The Pennsylvania Supreme Court requires "a concurrence of four conditions" before claim preclusion applies. *In re Iulo*, 564 Pa. 205, 766 A.2d 335, 337 (Pa.2001) (citing *Safeguard Mut. Ins. Co. v. Williams*, 463 Pa. 567, 345 A.2d 664, 668 (Pa.1975)). These four conditions require that there exist "an identity of issues, an identity of causes of action, identity of persons and parties to the action, and identity of the quality or capacity of the parties suing or being sued." *Id.* (citing *Safeguard Mut.*, 345 A.2d at 668).

[8] FNBW contends that the Pennsylvania default judgment was not "on the merits," but under Pennsylvania law, this is incorrect. *See Fox v. Gabler*, 534 Pa. 185, 626 A.2d 1141, 1143 (1993) ("[W]e long ago concluded that the judgment by default is res judicata and quite as conclusive as one rendered on a verdict after litigation insofar

Similarly, collateral estoppel is inapplicable because under Pennsylvania law, a default judgment lacks the requisite element that the issue be "actually litigated." Thus "[a] default judgment is not entitled to the preclusive effect of collateral estoppel." *Fleet Consumer Discount Co. v. Graves*, 33 F.3d 242 (3d Cir.1994); *McGill v. Southwark Realty Co.,* 828 A.2d 430, 434-435 (Pa.Cmwlth. 2003).

The *Rooker-Feldman* doctrine,[9] which generally bars federal appellate review of state court decisions, is not invoked by the parties, and may be inapplicable because the U.S. Supreme Court has held that the doctrine may not bar actions by a nonparty to the earlier state suit, even if that party is in privity with a party to the state suit. *See Lance v. Dennis,* 546 U.S. 459, 464 (2006).

Lastly, the parties address the Kansas Uniform Enforcement of Foreign Judgments Act, KSA 60-3001 *et seq.*, but this case is not brought under that Act. Plaintiffs have instead filed a federal declaratory judgment action based on diversity jurisdiction. Although the KUEFJA remains relevant, the Court focuses its analysis on the full faith and credit clause.

### B. Full faith and credit

The Tenth Circuit has recently reviewed the principles for giving effect to a state court judgment in a subsequent federal lawsuit, as here.

---

as a defaulting defendant is concerned.)"

[9]The *Rooker–Feldman* doctrine provides that federal courts, other than the United States Supreme Court, lack subject matter jurisdiction to review and reverse judgments rendered by state courts. *See Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923); *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983); *see also* 28 U.S.C. § 1257 (conferring certiorari power solely upon the United States Supreme Court).

"'The preclusive effect of a state court judgment in a subsequent federal lawsuit generally is determined by the full faith and credit statute,' 28 U.S.C. § 1738, which 'directs a federal court to refer to the preclusion law of the State in which judgment was rendered.'" *Brady v. UBS Fin. Servs., Inc.*, 538 F.3d 1319, 1327 (10th Cir. 2008) (quoting *Marrese v. Am. Acad. of Orthopaedic Surgeons*, 470 U.S. 373, 380 (1985)).

*Sierra Club v. Two Elk Generation Partners, Limited Partnership*, No. 10-8032, __ F.3d __, (10th Cir. May 31, 2011). "As a general rule, when a properly authenticated judgment of a state other than Kansas is offered as evidence in a Kansas court, the Full Faith and Credit Clause of the United States Constitution, Article 4, § 1, gives the foreign judgment the same force and effect in Kansas as it has in the state where the judgment was rendered." *Padron v. Lopez,* 289 Kan. 1089, 1096 (2009). *See* K.S.A. 60-3002.

Foreign judgments and journal entry recitals are presumed valid and may not be impeached by collateral attack except for lack of jurisdiction or fraud in the procurement. State v. *Duke*, 205 Kan. 37, 40-41 (1970). "The registering court cannot reconsider the merits of the case, but may only inquire into the defenses of lack of subject matter or personal jurisdiction, or fraud in the procurement of the judgment, unless those issues were addressed by the rendering court." *Hankin v. Graphic Technology, Inc.*, 43 Kan.App.2d 92, 102 (2010). The party seeking to prevent enforcement of the foreign judgment has the burden of establishing either the lack of jurisdiction or fraud underlying the foreign judgment. *Padron*, at 1099.

Plaintiffs have shown that the Pennsylvania default judgment determined that the Loans were procured by fraud, and rescinded the Loans and any and all loan documents of any kind under the Loans. It is thus FNBW's burden to show why that

12

judgment should not be given effect in this case.

### 1. Lack of finality

FNBW suggests that the Pennsylvania judgment is unenforceable in Kansas because it is a default judgment and is thus a non-final order. The Court disagrees. "The rule in Pennsylvania is that a default judgment is a valid and final adjudication on the merits and therefore has res judicata effect barring future litigation." *Easley v. New Century Mortgage Corp.*, 2009 WL 2256692, at *2 n. 6 (E.D.Pa. July 28, 2009). No party appealed or otherwise challenged the underlying default judgment which found that Aleritas fraudulently induced Plaintiffs to enter into the loans in which FNBW participated. Once a default judgment becomes final, "all the general rules in regard to conclusiveness of judgments apply." *Morgan Guar. Trust Co. v. Staats*, 428 Pa.Super. 479, 631 A.2d 631, 638 (1993), *appeal dismissed*, 536 Pa. 628, 637 A.2d 288 (1994). Thus under Pennsylvania law, the default judgment entered in December of 2009 is final. Similarly, although FNBW moved unsuccessfully to intervene and vacate the default judgment in the Pennsylvania state court, it took no appeal from the Pennsylvania order denying its motion to intervene and open the default judgment. "A trial court's denial of a petition to open a default judgment that determines liability and damages constitutes a final order. *See Mother's Restaurant, [Inc. v. Krystkiewicz,*] 861 A.2d 327, 332 (Pa.Super. 2004) (en banc); Pa.R.A.P. 341(b)(1)." *PNC Bank, N.A. v. Unknown Heirs*, 929 A.2d 219, 226 (Pa.Super. 2007).

Kansas law is to the same effect. *See Simplexgrinnell, LP v. Hackney Elec. Co., Inc.*, 212 P.3d 263,  2009 WL 2371011 (Table) (Kan.App. 2009) (reversing case with directions to recognize as final a default judgment which had not been set aside or

modified.); *State, ex rel., v. Showalter*, 189 Kan. 562, 568–69, 370 P.2d 408 (1962); K.S.A. 60–255(b) (providing that a *default judgment* may be set aside in accordance with K.S.A. 60–260(b)); K.S.A. 60–260(b) (providing that on motion the court may relieve a party "from a *final judgment.*") Further, although some states provide in their Uniform Enforcement of Foreign Judgments Act that a judgment obtained by a default in appearance is not eligible for registration, *see e.g.*, *Seaboard Surety Co. v Waterbury* (1982) 38 Conn Supp 468, 470-71, 451 A2d 291 (1982), Kansas does not. *See* KSA § 60-3001 *et seq.* Because the Kansas legislature has chosen to treat default judgments the same as other judgments, Kansas courts would consider the Pennsylvania default judgment to be final.

### 2. Lack of personal jurisdiction over Aleritas

FNBW next contends that the Pennsylvania court lacked personal jurisdiction over Aleritas. Plaintiffs respond that FNBW lacks standing to raise this challenge, and has waived it by its delay. The Court agrees.

"One of these prudential limits on standing is that a litigant must normally assert his own legal interests rather than those of third parties. (Citations omitted.)" *Phillips Petroleum Co. v. Shutts,* 472 U.S. 797, 804 (1985). A lack of personal jurisdiction can usually be raised only by the affected party. *Jenkins v. Smead Mfg. Co.*, No. 09-CV-0261-IEG (BLM), 2009 WL 3628100, at *3 (S.D.Cal. Oct.28, 2009) (defendant lacks standing to raise lack of personal jurisdiction on behalf of additional defendants named in amended complaint); *Sayles v. Pac. Eng'rs & Constructors, Ltd.*, No. 08-CV-676S, 2009 WL 791332, at *7 (W.D.N.Y. Mar.23, 2009) (defendant lacks standing to contest personal jurisdiction over co-defendant). The rationale for this rule is

that the requirement of personal jurisdiction "represents a restriction on judicial power, not as a matter of sovereignty, but as a matter of individual liberty." *Ins. Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 702 (1982). Because the requirement of personal jurisdiction represents an individual right, it can be waived. *Id.* at 703. *Cf, Clark v. Associates Commercial Corp.*,149 F.R.D. 629, 634 (D.Kan. 1993) (refusing to consider plaintiff's objections to the court's in personam jurisdiction over third-party defendants, due to lack of standing).

Only in very limited circumstances not shown here may a defendant have standing to assert a personal jurisdiction defense belonging to another. *See, e.g., Hanson v. Denckla*, 357 U.S. 235, 245 (1958) (conferring standing on defendants who otherwise would be unable to obtain lawful personal jurisdiction over a truly indispensable party/trustee);[10] *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 804 (1985) (conferring standing on defendants to challenge court's personal jurisdiction over non-consenting class members). FNBW thus lacks standing to object to the Pennsylvania court's assertion of personal jurisdiction over Aleritas.

Even assuming FNBW's standing, however, FNBW has waived the issue by waiting until now to present it. FNBW could have advanced the issue of insufficient

---

[10]FNBW does not contend that it was an indispensable party to the Pennsylvania action to rescind the Loan agreements. Further, the record shows that FNBW has no proprietary interest in the loans, no legal title to the loans, and no contractual relationship to the borrower, thus there is no basis for finding it to be an indispensable party to an action to rescind the loans. *Cf F.D.I.C. v. Adams,* 187 Ariz. 585, 594-595 (Ariz.App. Div. 1,1996) (finding participant bank, even though assignee of the lead bank as its servicing and collection agent, was not an indispensable party in lead bank's action against borrower); *Wells Fargo Bank Minnesota, Nat. Ass'n v. B.C.B.U.* 143 Cal.App.4th 493, 506, 49 Cal.Rptr.3d 324, 332 (Cal.App. 4 Dist. 2006) (finding participant bank was not an indispensable party in lead bank's action against borrower).

minimum contacts in the Pennsylvania court when it challenged the sufficiency of service of process on Aleritas. "There is nothing in the concept of due process which demands that a defendant be afforded a second opportunity to litigate the existence of jurisdictional facts." *Sherrer v. Sherrer*, 334 U.S. 343 at 348 (1948). "A party cannot escape the requirements of full faith and credit and res judicata by asserting its own failure to raise matters clearly within the scope of a prior proceeding." *Underwriters Nat. Assur. Co. v. North Carolina Life and Acc. and Health Ins. Guaranty Ass'n,* 455 U.S. 691, 710 (1982). This principle is underscored by the rules of civil procedure, which not only contemplate the lodging of certain defenses at the earliest point in a lawsuit, but also mandate a waiver of those defenses if not presented at the first available opportunity. *See Travelers Casualty and Surety Co. of America v. Unistar Financial Service Corp.*, 35 Fed.Appx. 787 (10th Cir. 2002).

But even assuming, *arguendo*, that FNBW has standing to raise a purported defect in the Pennsylvania court's personal jurisdiction over Aleritas, and did not waive that objection, the Court finds this exception inapplicable by virtue of its own terms. The registering Court cannot inquire into the defense of personal jurisdiction where that issue was addressed by the rendering court.

> The registering court cannot reconsider the merits of the case, but may only inquire into the defenses of lack of subject matter or personal jurisdiction, or fraud in the procurement of the judgment, *unless those issues were addressed by the rendering court. See Grynberg v. Shaffer*, 216 Ariz. 256, 260, 165 P.3d 234 (2007); *Firstar Bank Milwaukee, NA v. Cole*, 287 Ill.App.3d 381, 383, 222 Ill.Dec. 796, 678 N.E.2d 668 (1997); *Crist v. Hunan Palace, Inc.*, 277 Kan. 706, 718, 89 P.3d 573 (2004).

*Hankin v. Graphic Technology, Inc.*, 43 Kan.App.2d 92, 102 (Kan.App. 2010) (italics added). *See Undrey Engine & Pump Co. v. Eufaula Enterprises, Inc.*, 226 Kan. 186,

16

189, 597 P.2d 246, 249 (1979) (where another state's court had found personal jurisdiction over a party, the issue "is not subject to relitigation in the courts of Kansas, but is res judicata.") A collateral attack on jurisdictional grounds is precluded in a subsequent proceeding where the jurisdictional issue was "fully and fairly litigated and finally decided" in the prior proceeding. *Durfee v. Duke*, 375 U.S. 106, 111 (1963). As long as a party had an opportunity to litigate the jurisdictional issue, it is not subject to collateral attack on that basis. *Ins. Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 702 n. 9 (1982).

The record shows that in the Pennsylvania action, FNBW raised the issue of the Pennsylvania court's personal jurisdiction over Aleritas. After the Pennsylvania default judgment was entered, FNBW attempted to intervene and contended that the court lacked personal jurisdiction over Aleritas because of insufficient service of process. The court resolved that issue by finding:

> ... that service upon defendant Aleritas was properly effectuated, by delivery to defendant Aleritas's duly registered agent, in accordance with Pennsylvania Rule of Civil Procedure 404 and 424 and the relevant Delaware law regarding registered agents, 8 Del.C. § 132.

Dk. 74, M & O, Exh. 119. Both Aleritas and FNBW had opportunity to litigate the jurisdictional issue, since Aleritas was properly served and FNBW actually raised the issue in the Pennsylvania court. Because the defense of lack of personal jurisdiction was raised by FNBW and was resolved by the Pennsylvania court, this court cannot reexamine that issue. The Pennsylvania judgment is thus not void for lack of personal jurisdiction over Aleritas.

### 3. Lack of notice to FNBW

FNBW additionally contends that in the absence of notice to it and an opportunity to participate in the Pennsylvania action, the judgment against Aleritas (the primary lender) should not be conclusive against it (a participating lender). It is uncontested that the Plaintiffs did not give FNBW notice of the Pennsylvania action during its pendency, and were not contractually required to do so. FNBW's first notice of the Pennsylvania action was after Plaintiffs filed this declaratory judgment action in Kansas. FNBW's position is that binding it to a prior default judgment entered against a different litigant violates basic considerations of procedural fairness, namely notice and an opportunity to be heard, particularly when the judgment entered by the Pennsylvania court rested not on a substantive determination of the law and facts, but rather on Aleritas' failure to appear.

FNBW's position is well taken. It is a well-established rule that only parties or their privies may be held to the results of a previous litigation. *See Richards v. Jefferson County*, 517 U.S. 793, 797 (1996); *McGinty v. Hoosier*, 291 Kan. 224 (2010).

> It is a principle of general application in Anglo-American jurisprudence that one is not bound by a judgment in personam in a litigation in which he is not designated as a party or to which he has not been made a party by service of process. (Citation omitted.) A judgment rendered in such circumstances is not entitled to the full faith and credit which the Constitution and statute of the United States (citations omitted) prescribe, (citations omitted), and judicial action enforcing it against the person or property of the absent party is not that due process which the Fifth and Fourteenth Amendments requires. (Citations omitted.)

*Hansberry v. Lee*, 311 U.S. 32, 40-41 (1940). *See Pelt v. Utah*, 539 F.3d 1271, 1281 (10th Cir. 2008) (quoting *Taylor v. Sturgell*, 553 U.S. 880 (2008)). *See generally Kremer v. Chemical Const. Corp.*, 456 U.S. 461, 481 (1982) (state proceedings need to satisfy the minimum procedural requirements of the Fourteenth Amendment's due process

18

clause in order to qualify for the full faith and credit guaranteed by federal law.)

FNBW was given no notice of the Pennsylvania action, was not a party to the Pennsylvania action, and is not alleged to have been in privity with any party to that action.[11] Accordingly, Plaintiffs have not met their burden to show that the Pennsylvania action should be given full faith and credit as to FNBW. Plaintiffs thus cannot enforce the Pennsylvania judgment against FNBW.

The Court notes, however, that the Pennsylvania judgment does not purport to bind FNBW or any other participating bank as a judgment debtor, and Plaintiffs seek nothing affirmatively from them in this suit. Instead, Plaintiffs seek to have this Court enforce the Pennsylvania judgment as between the parties to that suit (Plaintiffs and Aleritas), and as a consequence of that valid rescission of the Loans, find FNBW and other participating banks unable to enforce any obligations Plaintiffs may have had in relation to the Loans prior to rescission.

The Court has examined other defenses FNBW has summarily raised[12] in an attempt to show that the Pennsylvania judgment should not be given any effect in this case, but those defenses either ask the Court to reconsider the merits of that judgment, or relate to damages, or are unsupported by the facts of record. Accordingly, the Court

---

[11]The Court recognizes that "nonparties may be bound by a judgment for a host of different reasons." *U.S. ex rel. Eisenstein v. City of New York, New York*, __ U.S. __, 129 S.Ct. 2230, 2236 (U.S. 2009). Specifically, the Court recognizes six categories of discrete exceptions to the rule against nonparty preclusion, but the parties here do not contend that any of them applies. *See Taylor*, 553 U.S. at 907 (applying federal common law to determine preclusive effect of federal-court judgment; finding no such thing as virtual representation exists).

[12]These are unclean hands, lack of venue, failure to mitigate damages, failure to elect remedies, holder in due course, and payment of good and valuable consideration.

finds the Pennsylvania judgment of rescission valid as between Plaintiffs and Aleritas; consequently, FNBW and other participating banks are unable to enforce any obligations Plaintiffs may have had under the Loans or the Loan documents absent rescission. Examination of FNBW's motion for summary judgment yields that same result.

### IV. FNBW's motion for summary judgment

The Court first examines FNBW's motion for summary judgment on its counterclaim for breach of contract. FNBW contends that Plaintiffs are in breach of the loan agreements between Plaintiffs and Aleritas by virtue of Plaintiffs' non-payment to FNBW since December of 2009, the date of the Pennsylvania judgment of rescission. But FNBW is not a party to the loan agreements it seeks to enforce. Therefore, to have standing to enforce the contracts between Plaintiffs and Aleritas, FNBW must bring itself within some exception to the general rule that "no claim can be sued upon contractually unless it is a contract between the parties to the suit." *Wunschel v. Transcontinental Ins. Co.*, 17 Kan. App. 2d 457 (1992).

### A. Interest as participant bank

That FNBW is a participant bank does not bring itself within the rule. It is well established that "the participant bank has no legal relationship with the borrower," and that "[t]he borrower's and participant's relationships are solely with the lead bank." *First Bank of WaKeeney v. Peoples State Bank*, 12 Kan.App.2d 788, 790, 758 P.2d 236 (1988). As noted by the Eighth Circuit, "[a] participating bank's only relationship is with the lead bank; the participant cannot look to the borrower for satisfaction of the debt." *Leonard, et al. v. Dorsey & Whitney LLP, et al.*, 553 F.3d 609, 627 (8th Cir.2009) (citing

20

cases). In selling a participation interest to FNBW, Aleritas did not transfer any legal

ownership interest in the loans. Instead, Aleritas retained legal title to the loans.

> The participant bank, however, does not generally acquire legal title to the loan. *See, e.g., Belleville*, 170 Ill.App.3d at 904-05, 525 N.E.2d at 221-22, 121 Ill.Dec. at 415-16. This is because "[t]he participants can only look to their lead [bank] for satisfaction of claims arising out of the transaction; they are not themselves creditors of the borrower and so cannot assert creditor claims against the borrower." *Id.* at 904, 525 N.E.2d at 221, 121 Ill.Dec. at 415 (quoting *Armstrong, supra*, at 693); *see also Hibernia Nat'l Bank v. Federal Deposit Ins.* Corp., 733 F.2d 1403, 1407 (10th Cir.1984).

*F.D.I.C. v. Adams*, 187 Ariz. 585, 594-595 (Ariz.App. Div. 1,1996). *See Ottawa Sav.*

*Bank v. JDI Loans, Inc.*, 374 Ill.App.3d 394, 401 (Ill.App. 2 Dist. 2007), and cases cited

therein.

Generally, only a party to a contract, one in privity with a party, a third-party

beneficiary of the contract, or an assignee of the contract may sue on that contract.

FNBW contends that it has standing enforce Aleritas's loan agreements with Plaintiffs

by virtue of language in the CLA Addendum, the assignment from Aleritas to FNBW,

and the participation certificates themselves. The Court addresses these arguments

below, but notes that the *Wakeeney* case on which FNBW primarily relies was one in

which the participant bank sued the lead bank, not one in which the participant bank

sued the borrower, as here. This is a significant distinction.

### B. Interest as third-party beneficiary

FNBW first claims to have a legal interest protected by the CLA Addendum

between plaintiff and Aleritas. The question of whether, for standing purposes, a

non-party to a contract has a legally enforceable right therein is a matter of state law.

*See, e.g., Miree v. DeKalb County*, 433 U.S. 25, 29-33 (1977). Under Kansas law, a

non-party can establish standing to sue to enforce a contract if the non-party is an

intended third-party beneficiary of the agreement. *Byers v. Snyder*, 44 Kan.App.2d 380,

385-86 (2010).

> The burden of establishing standing to bring suit as a third party rests with the party asserting it. 'Before the issue is reached of whether a third party may directly enforce a contract from which he would benefit, the third party must show the existence of some provision in the contract that operates to his benefit.' (Citation omitted.)
> To be a third party beneficiary to a contract, the contract must be made for the third party's benefit as its object, and he must be the party intended to be benefitted in order to be entitled to sue upon it. [Citation omitted.] The third party beneficiary can enforce the contract if he is one who the contracting parties intended should receive a direct benefit from the contract. Contracting parties are presumed to act for themselves and therefore an intent to benefit a third person must be clearly expressed in the contract. [Citation omitted.] It is not necessary, however, that the third party be the exclusive beneficiary of all the promisor's performance. The contract may also benefit the contracting parties as well. [Citations omitted.]

*State ex rel. Stovall v. Reliance Ins. Co.*, 278 Kan. 777, 793-94 (2005).

Accordingly, the Court looks to the terms of the contracts between Plaintiffs and

Aleritas to determine whether those parties clearly expressed an intent to benefit FNBW

or other participating banks. Defendant contends that such an intent is shown in

paragraph 6 of the CLA Addendum, which states:

> Borrower [Plaintiff] agrees and consents to Lender's [Aleritas] sale or transfer, whether now or later, of the Loan, including, without limitation, Lender's sale or transfer of one or more participation interests in the Loan to one or more purchasers, whether related or unrelated to Lender; ... Borrower additionally waives any and all notices of sale of participation interests ... Borrower also agrees that the ... purchasers of any participation interests may or will be considered as the absolute owners of such interests in the Loan and will have all the rights granted under the participation agreement or agreements governing the sale of such participation interests. *Except for liability claims based upon intentional misconduct of Lender,* Borrower further waives all rights of offset or counterclaim that it may have now or later against ... any purchaser of such a participation interest and unconditionally agrees that such ... purchaser may enforce Borrower's obligations under the Loan irrespective of the failure or

22

insolvency of any holder of any interest in the Loan. Borrower further agrees that the ... purchaser of any such participation interests may enforce its interests irrespective of any personal claims or defenses that Borrower may have against Lender.

Dk. 76, Exh. 2, p. 4. (Emphasis added)[13]

The Court declines FNBW's invitation to look only to this isolated provision in determining this issue. Instead, the Court must consider the agreements as a whole.

In determining the intent of the contracting parties as to the rights of a third party beneficiary, the court must apply the general rules for construction of contracts. The contract is to be considered as a whole, not simply from the standpoint of one isolated provision. *Barnhart v. McKinney*, 235 Kan. 511, 682 P.2d 112 (1984). The intention of the parties and the meaning of the contract are to be determined from the instrument itself where the terms are plain and unambiguous. *First Nat'l Bank & Trust Co. v. Lygrisse*, 231 Kan. 595, 647 P.2d 1268 (1982).

*Fasse v. Lower Heating and Air Conditioning, Inc.*, 241 Kan. 387, 391 (1987).

The CLA and its Addendum, read in their entirety, demonstrate the parties' intent to benefit the Plaintiffs by their receipt of the loan proceeds, and to benefit Aleritas by its receipt of interest on repayments of the loan. The document does not express an intent to benefit the purchasers of participation interests. The document expresses the parties' awareness that participating parties will own their participation interests in the loan, but expresses no intent to benefit participating lenders in general, or FNBW in particular.

Even assuming some incidental benefit, "[k]nowledge that a contract will benefit a third party is not intent to benefit the third party. *Noller v. General Motors Corp.*, 244

_____

[13]The italicized language was not part of the stock language routinely used by Aleritas in such agreements, but was added by Plaintiffs' legal counsel. Although defendant urges an inference against Plaintiffs, as drafters of the language, the CLA Addendum states the Parties' agreement that "No inference in favor of, or against any party shall be drawn from the fact that such party has drafted all or any portion of this Agreement or any other Loan Document." Dk. 76, Exh. 2, p. 11, para. 22.

Kan. 612, 617, 772 P.2d 271 (1989)." *State ex rel. Stovall v. Reliance Ins. Co.*, 278 Kan. 777, 795 (2005). "Performance of a contract will often benefit a third person. But unless the third person is an intended beneficiary as here defined, no duty to him is created." Restatement (Second) of Contracts § 302, comment e (1979). *Reliance Ins. Co.*, 278 Kan. at 795.

Further, the CLA Addendum expressly states who its intended beneficiaries are, in providing:

> This Agreement shall be binding upon *and inure to the benefit of the parties hereto* and their heirs, administrators, personal and legal representatives, successors and assigns ...

Dk. 76, Exh. 2, p. 11, para. 22 (italics added). Had the parties desired to make FNBW or another participating bank an intended beneficiary, this would have been the natural place to say so.

FNBW cites no case finding a participating lender to be an intended beneficiary of any loan agreement between the primary lender and the borrower. The Court has discovered only one, whose facts are distinguishable from those presented here. In *Tax Investments, Ltd. v. Federal Deposit Ins. Corp.*, 763 F.Supp. 1452, 1457 (N.D.Ill.1991), the court found a major participant to be an intended beneficiary under the following facts: the participant had a 95% interest in the loan and thus was the primary beneficiary from the income generated by the loan; the parties at the time of contracting intended to secure one participating lender who would provide virtually all of the funds; the borrower first negotiated directly with the 95% participant and contacted the lead bank only because that participant demanded that a local bank service the loan; and, the parties manifested their intent for the 95% participant to play an integral role in the

loan transaction.

Here, in contrast, FNBW is a minor participant  having only an 8.5% interest in the loan and thus is not the primary beneficiary from the income generated by the loan. No negotiation is alleged to have occurred directly between Plaintiffs and FNBW, and all negotiations were between Plaintiffs and Aleritas, or between Aleritas and FNBW. The record reveals no intent for FNBW or any other participant to play an integral role in the loan transaction. Plaintiffs selected Aleritas directly as their primary lender, and were not required to do so by a participating bank with a majority interest. The Court thus finds no basis in the record for FNBW's assertion that it is a third-party beneficiary of the loan contracts.

FNBW therefore lacks standing to challenge the rescission of those loans, even if it might benefit collaterally from their reinstatement.

> '... A mere incidental, collateral, or consequential benefit which may accrue to a third person by reason of the performance of contract, or the mere fact that he has been injured by the breach thereof, is not sufficient to enable him to maintain an action on the contract. Where the contract is primarily for the benefit of the parties thereto, the mere fact that a third person would be incidentally benefited (sic) does not give him a right to sue for its breach ....' (p. 733.)

*In re Shevling*, 278 Kan. 356, 360 (2004) (quoting with approval 17 Am.Jur.2d, Contracts, § 307). As an incidental beneficiary, at best, FNBW has no ability to enforce the agreements, even if they had not been rescinded. Not everyone who may benefit from the performance of a contract between two other persons, or who may suffer from its nonperformance, is permitted to enforce the contract by court action. *Martin v. Edwards*, 219 Kan. 466 (1976) (finding donee beneficiary lacked standing to enforce contract).

But even if FNBW were an intended third party beneficiary, it has shown no support for its contention that its rights as a third-party beneficiary should be measured by the terms of the contracts before they were rescinded. Any claim of FNBW as a third-party beneficiary depends upon the validity of the underlying contract between Plaintiffs and Aleritas. *See Stanfield v. W.C. McBride, Inc.*, 149 Kan. 567 (1939) (a contract made expressly for the benefit of a third person may be enforced by the third party at any time before the parties rescind it). A third-party beneficiary's rights cannot rise higher than those of the parties to the contract, and "rescission deprives the beneficiary of the benefits that he might otherwise be entitled to." *Martin v. Edwards*, 219 Kan. 466 (1976). *See Stokes Rowe Partnership v. United American Sur. Co., Ltd.,1989* WL 118910, 1 (E.D.Pa. 1989); *Bird v. Penn Cent. Co.* 334 F.Supp. 255, 261 (D.C.Pa. 1971); Restatement (Second) of Contracts § 309(1) (1981). The Pennsylvania judgment is valid as between the parties to that suit, thus the Pennsylvania judgment of rescission of the loan agreements deprives FNBW, if a third-party beneficiary, of all rights it may otherwise have had under those agreements.

FNBW's primary assertion is that the CLA Addendum expressly gives it the right to "enforce Borrower's obligations under the Loan irrespective of the failure or insolvency of any holder of any interest in the Loan." But even if this language somehow granted FNBW standing to enforce the agreement, the same language defeats FNBW's claim for breach of contract against the Plaintiffs, because Plaintiffs currently have no "obligations under the Loan," due to the rescission of the Loans.

FNBW also generally contends that rescission, if effective as to it, would be unjust because its rights would be prejudiced. It is true that rescission, an equitable

26

remedy, should not be granted where a third-party beneficiary has detrimentally acted in reliance on the existence of the contract. *See* CJS Contracts § 620 (2011). But as addressed above, FNBW is no third-party beneficiary. Further, given the procedural posture of the case, this court is not at liberty to reexamine the merits of the case to determine whether rescission would be inequitable or should not have been granted.

### C. Interest by Assignment/ Participation Agreements

FNBW next contends that it has a right to enforce the contract between Plaintiffs and Aleritas because on September 12, 2008, Aleritas assigned its rights and duties to FNBW. FNBW contends that when Aleritas failed to distribute certain loan payments it received from plaintiffs, ceased its day-to-day operations and was unable to service plaintiffs' loans, FNBW assumed all the administration duties previously held by Aleritas. FNBW separately claims the right to enforce the terms of the loan against Plaintiffs by virtue of its Participation Agreement with Aleritas.[14] The court addresses these two issues together, as they are interrelated in part.

### 1. Assignment

The parties agree that Aleritas remained the "lender" at all times under the loan documents, and that Aleritas assigned to FNBW certain rights, including the right to receive repayments on the loans from Plaintiffs. Plaintiffs admit that they consented to the assignment when it occurred, but contend that the assignment was merely a limited assignment of loan servicing duties which did not convey Aleritas's ownership interest in the loans themselves.

---

[14]Plaintiffs erroneously contend that this issue is not included in the pretrial order. *See* Dk. 70, p. 9.

The Court agrees. The assignment confirms that Aleritas assigned to FNBW only administration duties, including loan servicing, but not all of Aleritas's right and title to the loans. The "duties assumed" by FNBW are specifically defined in the Assignment Agreement, and are limited to those expressly stated.

> [FNBW] agrees to perform all of the loan administration duties of Aleritas set forth in each Participation Agreement. Loan administration duties shall include but not be limited to: calculating Borrower's interest rate ...; receiving and applying Borrower's payment ...; performing all of the loan administration duties set forth in Section 12 (A) (B) and (C) of... each Participation Agreement; notifying Aleritas in the event of a Borrower payment default; providing monthly remittance statements and payments to Participating Lenders and Aleritas; and, notifying Borrowers that [FNBW] has agreed to process Borrower payments and taking all steps necessary to redirect Borrowers' payments from Aleritas to [FNBW]. (collectively hereinafter the "Assumed Duties"). [FNBW] shall have no duties pursuant to this Agreement or the Participation Agreement unless specifically assumed by [FNBW] pursuant to this Agreement.

Dk. 76, Exh. 10.

The assignment nowhere gives FNBW a right or a duty to proceed directly against Plaintiffs in the event of default. Instead, the assignment establishes FNBW's duty to "notify Aleritas in the event of a Borrower payment default," implying that any recourse would be solely up to Aleritas. This, plus the agreement's express restriction that FNBW shall have "no duties pursuant to the assignment or the participation agreement" unless specifically stated, refutes FNBW's position that the assignment grants it standing.

### 2. Participation Agreement

The Court next examines the Participation Agreement, but finds that the "loan administration duties of Aleritas set forth in each Participation Agreement" are not significantly different from those specified in the Assignment.  Section 12 (A) of the

Participation Agreement, captioned "Loan Servicing," states:

> [Aleritas] may administer the Loan and any related security and guaranties as though it were the sole owner and holder thereof. Except as provided below, [Aleritas] will make all decisions concerning the servicing of the Loan and any related security and guaranties, acceleration, foreclosure, acquisition of other security or guaranties, deficiency judgments, purchase at foreclosure sales, and administration and disposition of acquired security. [Aleritas] will not, without [FNBW's] written consent, reduce principal or interest with respect to the Loan as or release or allow for the substitution of any Property, outside the normal course of dealing with [FNBW] so as to substantially reduce the possibility of repayment of the Loan. [Aleritas] will not, without [FNBW's] written consent, renew, extend or consent to the revision of the provisions of any note or security documents covered or waive any claim against Obligor.

Dk. 76, Exh. 9, p. 2.

FNBW seizes upon the language that as administrator (post-assignment), it can "administer the Loan and any related security and guaranties as though it were the sole owner and holder thereof." But the right to administer a loan as though one solely owned it is not the same as having sole ownership of the loan itself. As defined by the Participation Agreements in this case, the relationship between Aleritas and FNBW (or other participants) is, respectively, that of "seller" and "purchaser" of a "percent interest ... in the principal and interest accruing from the Loan." Dk. 76, Exh. 9, p. 1.

Additionally, Section 12 (B) of the Participation Agreement, regarding "Seller's Duty to Purchaser," states:

> Seller [Aleritas] will use the same degree of care in servicing and collecting the Loan as it would for its own accounts. Seller [Aleritas] will not be liable to Purchaser [FNBW] for any action taken or omitted or for any error in judgment, except for bad faith or willful misconduct.

Dk. 76, Exh. 9, p. 2. Although this language may give FNBW a right to bring an action against Aleritas for bad faith or willful misconduct by Aleritas in servicing and collecting the Loans, it does not give FNBW any right to bring an action directly against the

borrowers for defaulting on the Loans, as it seeks to do in this case. The Court therefore finds no basis in the Assignment or Participation Agreement for FNBW's standing to sue Plaintiffs for breach of contract.

### 3. Status of assignee

Even assuming, *arguendo*, a broader assignment to FNBW of all of Aleritas's interest, rights and duties under the loan agreements, an "assignee ... stands in the shoes of its assignor and obtains only the right, title, and interest ... which the assignor has at the time of the assignment and can acquire no greater rights from the assignment than those possessed by the assignor." *OXY USA, Inc., v. Colorado Interstate Gas*, 20 Kan.App.2d 69, Syl. ¶ 4, (1994). *See H. Freeman & Son*, 239 Kan. 161 (1986); Restatement (Second) of Contracts § 336 Comment b (1981) ("[T]he assignment of a non-negotiable contractual right ordinarily transfers what the assignor has but only what he has."); *Riverside Health System, Inc. v. Unruh*, 2003 WL 22479600, 3 (Kan.App. 2003). Accordingly, as an assignee, FNBW would stand in the shoes of the assignor, Aleritas.

It is well established that an assignee takes subject to all equities and defenses existing between the assignor and the debtor prior to the notice of assignment. *Cadle Co. II, Inc. v. Lewis*, 254 Kan. 158, 164 (1993) (quoting from *Thweatt v. Jackson*, 838 S.W.2d 725 [Tex.App.1992] ). Since contracts induced by fraud are voidable contracts, *Stanfield v. W.C. McBride, Inc.*,149 Kan. 567 (1939), FNBW, if an assignee of all of Aleritas' right and interest, could take only Aleritas's voidable interest in the loan agreements between Aleritas and Plaintiffs. *See Hawthorn-Mellody, Inc. v. Driessen,* 213 Kan. 791 (1974) (permitting defense of fraud in the inducement to be raised against

assignee); *Perry v. Goff Motors, Inc.*,12 Kan.App.2d 139 (1987); Restatement of Contracts, 2nd § 336.

Under Pennsylvania law, rescission of a contract is not a remedy effective solely between the parties to the contract, but is transactional in nature, treating a contract voided for fraud in the inducement as though it had never existed. Rescission "amounts to the unmaking of a  contract, and is not merely a termination of the rights and obligations of the parties towards each other..." *Metropolitan Property and Liability Ins. Co. v. Com.*, 97 Pa. *Cmwlth*, 219, 509 A.2d 1346, 1348 (1986); *See R & R Capital, LLC v. Merritt*, 632 F.Supp.2d 462 (E.D.Pa. 2009) (rescission does not just terminate the parties' agreement, it unmakes the agreement and consequently abrogates all rights and responsibilities of parties towards each other from contract's inception). "Rescission is a remedy in equity to void a contract *ab initio* and to return the parties to their positions prior to the execution of the writing or to do so to the extent possible." *Coram Healthcare Corp. v. Aetna U.S. Healthcare, Inc.*, 94 F. Supp.2d 589, 596 (E.D. Pa. 1999).

The same is true in Kansas. *See Garrison v. Berryman*, 225 Kan. 644, 646 (1979); *Holt v. Richardson*, 116 Kan. 47 (1924); *Schmidt v. Keeler*, 220 P.3d 593, 2009 WL 4930104 (Table) (Kan. App. 2009). When a contract is canceled or rescinded, there are no rights that can pass to the assignee to replace those under the assigned agreement. Thus FNBW has no present rights as an assignee of Aleritas or as the administrator under the Participation Agreement to enforce the loan agreements as though they had not been rescinded.

### D. Conclusion - breach of contract

FNBW refers to Aleritas and Plaintiffs as "wholly unrelated parties," in seeking to persuade the Court that the Pennsylvania judgment is inapplicable to it (Dk. 84, p. 21), yet FNBW claims standing as a third-party beneficiary or assignee of those same parties in seeking to assert its breach of contract claim against Plaintiffs (Dk. 84, p. 26). FNBW cannot have it both ways. FNBW has shown no legally protected interest which would permit it to sue Plaintiffs for breach of contract. If it had such an interest as a privy with Aleritas (as a general assignee would ordinarily have), FNBW would then be bound by the res judicata effect of the judgment entered by the Pennsylvania court.[15] Since FNBW lacks privity, it had no right to receive notice of the Pennsylvania action,  and has no right to enforce the terms of the agreements between Aleritas and Plaintiffs. *See generally Richards*, 517 U.S. at 798 (the principle of res judicata incorporates the due process requirements of notice and opportunity to be heard through the concept of privity). Because FNBW has failed to establish a right to enforce the rescinded loan agreements against Plaintiffs as a third-party beneficiary, as an assignee, or as an administrator, it has shows no prima facie case of breach of contract, as a matter of law.

### E. Equitable Estoppel

FNBW additionally contends that even if it lacks the right to enforce the Loans by

---

[15]*See Allen v. McCurr*y, 449 U.S. 90, 94, 101 S.Ct. 411, 66 L.Ed.2d 308 (1980) (res judicata, or claim preclusion, generally precludes parties or their privies whose action has reached a final judgment on the merits, from relitigating issues that were or could have been raised in that action); *Taylor*, 553 U.S. at 893 (holding that nonparty preclusion may be justified based on a variety of pre-existing substantive legal relationships between the person to be bound and a party to the judgment, including assignee and assignor.); CJS JUDGMENTS § 1138 (Under principles of res judicata, a judgment against an assignor may bind the assignee.)

virtue of the contractual agreements discussed above, it has gained that right by equitable estoppel. Equitable estoppel is not grounded on any agreement, but arises in the absence of any agreement through the combined effect of misrepresentation and detrimental reliance. *See Cosgrove v. Young*, 230 Kan. 705, 717 (1982). "Estoppel will not be deemed to arise from facts which are ambiguous and subject to more than one construction." *Gillespie v. Seymour*, 250 Kan. 123, 129-30, 823 P.2d 782 (1991) (citations omitted). The right to estoppel must be clear under the circumstances of the case.

FNBW contends that Plaintiffs are estopped to deny that FNBW is the "lender" under the loan agreements because Plaintiffs took the following inconsistent acts indicating their acceptance of FNBW as the *de facto* lender: 1) Plaintiffs made regular monthly loan payments to FNBW for over a year; 2) Plaintiff TST requested and received a waiver of the EBITDA[16] loan covenant from participating banks, who were erroneously identified as "lenders" and "successors"[17] to Aleritas; and, 3) Plaintiffs sought and received an agreement from the participating lenders that plaintiffs could pay interest only on the Loans for six months. Dk. 76, p. 21-24.

### 1. Disputed facts

The Court finds that FNBW's claim of estoppel is based on disputed facts. First, Plaintiffs dispute FNBW's contention that in 2009, TST was unable to meet its EBITDA loan covenant which required "Borrower [to] maintain minimum EBITDA levels of

---

[16]EBITDA is an acronym for "earnings before interest, taxes, depreciation and amortization."

[17]FNBW admits that it is not, in fact, a "successor" in interest to Aleritas.

$1,600,000." Plaintiffs show that the minimum EBITDA level was to be determined on "an annualized basis," so cannot have been determined before the end of 2009, at which time the loan contracts had already been rescinded.[18]

Secondly, FNBW's contention that in the fall of 2009, Plaintiffs sought loan concessions from Quivira Capital by requesting interest-only payments for six months, is undisputed. The parties agree that Quivira Capital was acting as the collateral preservation agent for "the lender" on the loans, but plaintiffs believe that Quivira Capital was the collateral preservation agent for Aleritas, while FNBW believes that Quivira Capital was the collateral preservation agent for the participating lenders. Quivira never advised plaintiffs that it was acting on behalf of participating lenders rather than on behalf of Aleritas. The reasonableness of the parties' beliefs is disputed and cannot be determined by the court based on the facts of record.

Further, some of the facts relied upon in support of FNBW's claim of estoppel are stated in the affidavit of Brian Wohler. Plaintiffs have moved to strike that affidavit in part, claiming his testimony lacks any factual basis and is based on records that FNBW failed to produce in discovery. *See* Dk. 85. FNBW opposes the motion to strike, contending that the records are also within Plaintiff's knowledge or possession, and that Brian Wohler has an adequate factual basis for his assertions. Here, as above, the

---

[18]Further, on or about January 27, 2009, plaintiff Audet, on behalf of TST and Tri-State and as personal guarantor, entered into an agreement with the participating lenders entitled "Consent in relation to Addendum to Commercial Loan Agreement," which referred to the participating lenders as "successors to Aleritas." FNBW contends that it detrimentally relied on this Consent. Plaintiffs contend they were unaware of the "successor" language at the time they signed the consent, but all parties now agree that the participants were and are not, in fact, "successors to Aleritas." FNBW acknowledges that it is not a corporate successor or a subsidiary or a sister corporation to Aleritas. The effect of this misstatement is unclear.

record is insufficiently developed to permit the Court to determine this issue as a matter of law. Accordingly, the majority of the facts underlying FNBW's claim to estoppel are disputed.

### 2. Ratification/reexamination

Nonetheless, even were the court to accept FNBW's version of the facts for purposes of this motion, no basis for equitable estoppel has been shown. FNBW's estoppel argument is nothing more than an assertion that Plaintiffs, by their acts set forth above, elected to ratify the voidable contracts, so the contracts should not have been rescinded. But the issue whether Pennsylvania court erred in rescinding the loan agreements cannot be reexamined by this court. The Loans have been rescinded and this court is not at liberty to determine whether the facts now asserted by FNBW would have been sufficient to show ratification or estoppel precluding rescission, had they been presented in the Pennsylvania action.

### 3. Applicability of estoppel

The Court additionally notes some authority that Kansas law would not support the application of equitable estoppel by an assignee, where its assignor has engaged in purposeful or fraudulent misconduct. *See Perry v. Goff Motors*, 12 Kan.App.2d 139, 736 P.2d 949 (1987) (finding contract for the purchase of a motor vehicle to be unenforceable against the buyers, notwithstanding the seller's claim of equitable estoppel). Under Kansas law, an assignee "[takes] the contract subject to the plaintiff's claim that the sale was fraudulent and void," and "validity cannot be given to a void contract through any principle of estoppel." 12 Kan.App.2d at 145. Although fraudulent inducement typically renders a contract voidable rather than void, *School-Link*

35

*Technologies v. Applied Resources*, 471 F.Supp.2d 1101, 1118-19 (D.Kan. 2007),

"nothing in the case suggests that a different rule applies for voidable contracts." *Maple*

*Trade Finance, Inc. v. Lansing Trade Group, LLC*,  2011 WL 1060961, 16 (D.Kan.

2011). As found by the Kansas Supreme Court: "... equitable estoppel raises no higher

than the law of contract, and is not available in any cases where, under the same

circumstances, a contract pertaining to the same matter would be void or voidable."

*Kansas Elec. Power v. Thomas*, 123 Kan. 321 (1927). Accordingly, FNBW has failed to

show a right to estoppel, either factually or legally.

### 4. Effect of estoppel

But even had FNBW shown that Plaintiffs should be estopped from denying that

FNBW is the "lender" as that term is used in the Loan documents, such estoppel would

not assist FNBW in its counterclaim to recover payment of principal and interest.

Equitable estoppel is a defense which, if established, would preclude Plaintiffs from

asserting their rights against FNBW, but cannot be affirmatively used by FNBW to

create a cause of action. *See Fischbach and Moore, Inc. v. Honeywell, Inc.*, 1989 WL

8026 (D.Kan. 1989) (equitable estoppel cannot be used to maintain a cause of action,

and is "used only as a shield and not a sword.") Because FNBW lacks standing to

enforce Plaintiffs' contracts with Aleritas, the Court has no need to address Plaintiffs'

asserted affirmative defenses to those claims. FNBW's motion for summary judgment

shall therefore be denied.

### V.  Conclusion

Although the Pennsylvania judgment does not "bind" FNBW, that judgment is

valid as between the parties, thus the Loans have been validly rescinded. Further,

36

FNBW has no standing to enforce the Loans, since it is not a third party beneficiary, a general assignee or successor in interest to Aleritas. Summary judgment in Plaintiffs' favor is warranted.

IT IS THEREFORE ORDERED that Plaintiffs' motions for summary judgment (Dk. 73 & 97) are granted.

IT IS FURTHER ORDERED that First National Bank of Wamego's motion for summary judgment (Dk. 75) is denied.

IT IS FURTHER ORDERED that The Gibson Family Limited Partnership's motion for summary judgment (Dk. 95) is denied.

IT IS FURTHER ORDERED that plaintiffs' motion to strike in part the affidavit of Brian Wohler (Dk. 85) is denied as moot.

IT IS FURTHER ORDERED BY THE COURT THAT the clerk shall enter a declaratory judgment that:

1. because Loan No. 5483 and Loan No. 5484 have been validly rescinded, Plaintiffs owe no obligation under those loans, whether in contract or otherwise, to FNBW, to The Gibson Family Limited Partnership, or to any participating bank represented by FNBW in its capacity as servicer of those loans;

2. all security on Loan No. 5483 and Loan No. 5484 in the possession, custody or control of FNBW (including any in the possession, custody or control of Quivira Capital, LLC) shall be returned to Plaintiffs forthwith; and

3. all UCC filings on Loan No. 5483 and Loan No. 5484 shall be canceled or terminated forthwith.

Dated this 3rd day of August, 2011.


s/ Sam A. Crow
Sam A. Crow, U.S. District Senior Judge