IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

TST TRUCK INSURANCE, LTD.,
TST, LTD., and ANDREW B. AUDET,

        Plaintiffs,

    v.                           No. 09-4158-SAC

FIRST NATIONAL BANK OF WAMEGO, *et al*,

        Defendants.

MEMORANDUM AND ORDER

This case comes before the court on remand from the Tenth Circuit. The parties have fully briefed the remaining issues and the court is prepared to rule on the pending motions for summary judgment in accordance with the mandate. The relevant facts are included in prior orders and decisions by this court and the Tenth Circuit and will not be repeated herein except as necessary to the analysis.

**I. Breach of Contract by TST**

The Court first examines whether Wamego has established that TST[1] breached its contract, as alleged in Wamego's counterclaim.

TST does not dispute the facts establishing that it has breached its contract by not repaying the loan, when due. Those facts show that the Loan Agreement was a valid written contract, that Wamego performed its

---

[1] For purposes of convenience, the court refers to the plaintiffs collectively, as TST.

obligations under that contract, and that TST has not made any payments on its loan since November of 2009 at which time the loan balance was $6,761,434.62. TST does not dispute the facts supporting Wamego's calculation of interest on that balance in the amount of $1,435.65 per day.

Nonetheless, TST alleges that summary judgment is not warranted on Wamego's breach of contract counterclaim because: 1) Wamego failed to adequately refute TST's defense to that counterclaim; 2) the law of the case doctrine prevents Wamego from enforcing TST's obligations to other participating lenders; and 3) Wamego's own damages are barred or reduced by the "intentional misconduct" clause in the Loan Agreement. TST also opposes Wamego's enforcement of a contractual attorneys' fees clause. These issues are addressed below.

## II. Alleged Procedural Failure

TST initially alleges that Wamego has not met its burden to disprove TST's affirmative defense because Wamego has "hardly addressed the issue" in its brief. Wamego replies that it met its burden of so doing by stating four reasons why TST's defense of intentional misconduct could not succeed, based on controlling authority and the record. The Court agrees that Wamego has squarely addressed this issue. *See* Dk. 149 at 19-21. Thus no procedural failing bars Wamego from prevailing on its counterclaim.

### III. Other Participating Lenders

Wamego seeks summary judgment not only on behalf of itself but also on behalf of other participants in Loan #5483. TST asserts that the law of the case doctrine prevents Wamego from enforcing TST's obligations to other participating lenders.

The law of the case doctrine "posits that when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case." *Arizona v. California,* 460 U.S. 605, 618, 103 S.Ct. 1382, 75 L.Ed.2d 318 (1983). "Law of the case principles apply only to decisions on the actual merits." *Kennedy v. Lubar,* 273 F.3d 1293, 1299 (10th Cir. 2001) (emphasis added). "[O]nly matters actually decided, explicitly or implicitly, become law of the case," and it is therefore "important to reconstruct the pertinent circumstances surrounding and informing this court's previous decision[s]." *Wilmer v. Bd. of Cnty. Comm'rs,* 69 F.3d 406, 409 (10th Cir. 1995). See *Huffman v. Saul Holdings Ltd. Partnership,* 262 F.3d 1128, 1132 (10th Cir. 2001).

TST's argument has facial appeal. This Court's order dated August 3, 2011 ruled that Wamego's role as loan administrator did not give Wamego a right to enforce the Loan. Dk. 102, p. 27-28. Wamego did not challenge that ruling on appeal, as the Tenth Circuit noted in its order. Dk. 143, p. 18. And the Tenth Circuit's language does not favor Wamego's right to enforce other participants' interests in the Loan. *See e.g.* Dk. 143, p. 12 (finding the

3

Pennsylvania court's judgment "does not strip Wamego or other participants of its "right to protect *its own interests* under the contract," and does not "eliminate Wamego's ability to … enforce TST's contractual obligations *to it*.") But the posture of the case on appeal presented only Wamego's individual interests. The Tenth Circuit based Wamego's ability to enforce obligations under Loan #5483 on Wamego's standing as an intended beneficiary pursuant to the participation agreement.

Wamego counters that a judgment, once reversed or vacated by a higher court, has no validity, force or effect. This is a correct general statement of the law. *See generally Butler v. Eaton,* 141 U.S. 240, 244 (1891). But that proposition does not govern as to issues not altered by the higher court. More on point is the rule that a district court order must be obeyed until a higher court sets it aside. *See United States v. United Mine Workers of America,* 330 U.S. 258, 293 (1967) (finding "an order issued by a court with jurisdiction over the subject matter and person must be obeyed by the parties until it is reversed"). Thus parties must follow an order that is not modified or reversed by a higher court, and a lower court may enforce unappealed portions of its order, or may have reason not to.

Law of the case principles are not absolute. *See Kennedy,* 273 F.3d at 1299. Exceptions exist to that doctrine. *See Pepper v. United States*, 131 S.Ct. 1229, 1250-51 (2011); *Trujillo v. Bd. of Educ. of Albuquerque Pub. Schs.,* 212 Fed.Appx. 760, 766 (10th Cir. 2007). The doctrine is "to be

applied at the sound discretion of the court to effectuate the proper administration of justice." *United States v. Gama-Bastidas,* 222 F.3d 779, 785 (10th Cir. 2000) (internal quotations omitted). This doctrine "directs a court's discretion, it does not limit the tribunal's power." *Arizona,* 460 U.S. at 618.

> The doctrine is, however, "only a rule of practice in the courts and not a limit on their power." *Id.* (citing *Messinger v. Anderson,* 225 U.S. 436, 444, 32 S.Ct. 739, 56 L.Ed. 1152 (1912)). We have recognized three "exceptionally narrow" grounds for departure from that rule of practice: "(1) when the evidence in a subsequent trial is substantially different; (2) when controlling authority has subsequently made a contrary decision of the law applicable to such issues; or (3) when the decision was clearly erroneous and would work a manifest injustice." *United States v. Alvarez,* 142 F.3d 1243, 1247 (10th Cir.), *cert. denied,* 525 U.S. 905, 119 S.Ct. 242, 142 L.Ed.2d 199 (1998) (citing *Monsisvais,* 946 F.2d at 117).

*McIlravy v. Kerr-McGee Coal Corp.*, 204 F.3d 1031, 1035 (10th Cir. 2000). Accordingly, the doctrine "does not apply if the court is 'convinced that [its prior decision] is clearly erroneous and would work a manifest injustice.' " *Agostini v. Felton,* 521 U.S. 203, 236, 117 S.Ct. 1997, 138 L.Ed.2d 391 (1997) (quoting *Arizona,* 460 U.S., at 618, n. 8, 103 S.Ct. 1382; alteration in original).

Such is the case here. This Court's initial view of Wamego's interest, rights, and duties, from having reviewed the facts presented on summary judgment, was fundamentally narrower in scope and different in kind than is its view of those same matters now, having studied the decision of the Tenth Circuit. This Court's prior decision regarding Wamego's limited rights as an

administrator, which was not appealed, was in large part intertwined with its erroneous decision regarding Wamego's rights as a third-party beneficiary, which was appealed. *See e.g.,* Dk. 102, p. 27-30. The two roles are not totally unrelated. For example, the loan administration duties of Wamego are included in the participation agreement which the Tenth Circuit broadly construed, so must be broadly construed by this Court. Although the Tenth Circuit did not squarely address the issue of Wamego's rights as administrator, the matters which the Tenth Circuit *did* resolve convince this court of fundamental error in its prior conclusion regarding Wamego's rights as an administrator as well.

Further, this Court's conclusions as to Wamego's role and rights were also colored by its finding, reversed on appeal, that the Pennsylvania judgment validly rescinded the underlying Loans such that no participant or administrator could enforce them. To persist in that error would work a manifest injustice on the other participants to the loan because they would have no recourse for TST's breach of contract. Accordingly, the Court declines to apply the law of the case doctrine as to this unappealed issue.

TST does not controvert the facts set forth by Wamego which establish the following: in 2008 Aleritas transferred all of the loan administration duties to Wamego" by an agreement entitled "Assignment and Assumption of Loan Administration Duties; that contract states that Wamego "agree[d] to perform all of the loan administration duties of Aleritas," including

"receiving and applying [TST]'s payment in accordance with Sections 3 and 19" of the participants' participation agreements, as well as performing "all of the loan administration duties set forth in Section 12(A), (B), and (C)" of those participation agreements; Section 3 of those participation agreements authorized Aleritas to "receive all payments" from TST; and Section 12(A) of those participation agreements authorized Aleritas to "administer the Loan and any related security and guaranties as though it were the sole owner and holder thereof." Thus, by virtue of Aleritas's assignment of those rights, Wamego is, as a matter of law, entitled to collect TST's payments on its loan on behalf of other participants' interests in Loan #5483.

## IV. Affirmative Defenses

### A. Res Judicata

TST contends that Wamego's counterclaims are barred by the default judgment it received against Aleritas in the Pennsylvania state court. This court shared that view until it was squarely addressed and definitively reversed by the Tenth Circuit. That court's opinion leaves no room for this argument. *See* Dk. 143 at 11-12. TST has failed to raise a genuine issue of material fact that its defense of res judicata could succeed.

### B. Aleritas' Intentional Misconduct

Although TST references various affirmative defenses listed in the pretrial order, these all focus upon the intentional misconduct of the Lender, Aleritas. *See* Dk. 70, p. 12-13. These affirmative defenses are premised on

7

the following clause that TST and Aleritas inartfully inserted into the otherwise stock language of paragraph 6 of the CLA: "*Except for liability claims based upon intentional misconduct of Lender … .*" The relevant paragraph which includes this clause states:

> **CONSENT TO LOAN PARTICIPATIONS, ETC.** Borrower agrees and consents to Lender's sale or transfer, whether now or later, of the Loan, including without limitation Lender's sale or transfer of one or more participation interests in the Loan to one or more purchasers, whether related or unrelated to Lender. Lender may provide, without limitation whatsoever, to any one or more purchasers, potential purchasers or issuers, any information or knowledge Lender may have about Borrower or about any other matter relating to the Loan, and Borrower hereby waives any rights to privacy Borrower may have with respect to such matters. Borrower additionally waives any and all notices of sale of participation interests, all notices of any repurchase of such participation interests and all notices of issuance of notes or securities which are in whole or in part collateralized by Borrower's Loan. Borrower also agrees that the issuers of notes or securities and/or purchasers of any participation interests may or will be considered as the absolute owners of such interests in the Loan and will have all the rights granted under the participation agreement or agreements governing the sale of such participation interests. *Except for liability claims based upon intentional misconduct of Lender,* Borrower further waives all rights of offset or counterclaim that it may have now or later against any issuer of notes or securities or against any purchaser of such a participation interest and unconditionally agrees that such issuer or purchaser may enforce Borrower's obligations under the Loan irrespective of the failure or insolvency of any holder of any interest in the Loan. Borrower further agrees that the issuer of such notes or securities or purchaser of any such participation interest may enforce its interest irrespective of any personal claims or defenses that Borrower may have against Lender.

Dk. 76, Exh. 4, para. 6.

### 1. Law of the Case Doctrine

Wamego first contends that TST's intentional misconduct defense is precluded by the Tenth Circuit's ruling establishing the law of the case, albeit while addressing a separate issue.

The Tenth Circuit found the language of the CLA, which includes this clause, to be "clear and unambiguous." Dk. 143, p. 16. The Tenth Circuit also significantly relied on this very paragraph of the CLA in finding Wamego to be an intended beneficiary of the contract, saying:

> Finally, TST "agree[d] that the . . . purchaser of any such participation interests may enforce its interests irrespective of any personal claims or defenses that Borrower may have against Lender." *Id.* According to Wamego, this language clearly expresses TST's agreement to allow participants the benefit of directly enforcing TST's contractual obligations.

Dk. 143, p. 14. The Tenth Circuit agreed with Wamego's construction. After considering the entirety of the contract, the Tenth Circuit summarized its reasons for finding that Wamego was an intended beneficiary, repeating its reliance upon this provision:

> TST agreed to allow the sale of participating interests, to waive notice of the sale, and to consider the participants "as the absolute owners" of their interests. (Vol. 1 at 22.) And TST "unconditionally agree[d] that such . . . purchaser may enforce Borrower's obligations under the Loan irrespective . . . of any personal claims or defenses that Borrower may have against Lender." (*Id.*) No one claims this language is ambiguous—and the benefit is obvious.

Dk. 143, p.16. Based in significant part on this unambiguous language, the Tenth Circuit found Wamego to be an intended beneficiary of the contract.

Thus the crucial language is not mere dicta, but was an essential part of its ruling.

In light of these findings by the Tenth Circuit, TST's position that the Circuit made no ruling on whether paragraph 6 of the Loan Agreement precludes or limits Wamego's enforcement claim is not well taken. Although the Tenth Circuit was addressing a separate issue, its finding that "TST unconditionally agreed that such ... purchaser may enforce Borrower's obligations under the Loan irrespective ... of any personal claims or defenses that Borrower may have against Lender," (Dk. 143, p. 16) necessarily defeats TST's affirmative defense. The Tenth Circuit would not violate the bounds of logic by holding that this language means one thing in the context of one argument (intended beneficiary) and does not mean that same thing in the context of another argument (intentional misconduct defense).

### 2. Language is Unambiguous

Alternatively, even without applying the law of the case doctrine, this Court finds the CLA to be unambiguous.

> The cardinal rule of contract construction requires courts to determine the parties' intent from the four corners of an instrument by construing all provisions together and in harmony with each other rather than by critical analysis of a single or isolated provision, and reasonable rather than unreasonable interpretations are favored. [Citation omitted.] Errors in contracts, which do not create such inconsistency that the overall intent of the parties cannot be determined from the four corners of the instrument, do not result in an ambiguous contract but merely create an inconsistency subject to interpretation by the court considering the contract as a whole. [Citation omitted.]"

*Starr v. Union Pacific Ry. Co.*, 31 Kan.App.2d 906, 909-10, *rev. denied,* 276 Kan. 970 (2003). An agreement is not made ambiguous merely because the parties disagree as to its meaning. *Antrim, Piper, Wenger, Inc. v. Lowe*, 37 Kan.App.2d 932 (2007).

Here, in one sentence, TST agreed to waive all its rights of offset or counterclaim against any participant *except for* TST's liability claims based upon intentional misconduct of Lender. In the next sentence, TST agreed that participants could enforce their interests *despite any* personal claims or defenses that TST may have against the Lender. Because a liability claim based on the Lender's intentional misconduct is a personal claim by TST against the Lender, a facial conflict appears between these two provisions.

But one of the provisions of the Loan Agreement that assists in determining the parties' intent from its four corners is TST's explicit agreement that any inconsistencies in the Loan Agreement would be resolved in favor of the lender:

> To the extent that any of the provisions of this Agreement conflict with any other provisions of this Agreement, the provision which provides Lender the most protection and grants Lender the greatest rights shall control.

Dkt. No. 76, Exh. 4, p. 11. So, even assuming that the intentional misconduct clause squarely conflicts with TST's "unconditional" agreement that participating lenders can enforce their obligations regardless of any personal claims or defenses that TST may have against Aleritas, the Court must construe that language in favor of Wamego, who is enforcing the

Lender's rights, as TST agreed when it obtained its loan. Although

inconsistency is present, ambiguity is not.

### 3. Parol Evidence Rule

TST also seeks to admit parol evidence to show that the parties to the

loan agreement intended for the intentional misconduct clause to apply to

the remainder of the paragraph in which it appears. The effect of admitting

such evidence would be to add that clause to the end of a sentence in which

it does not appear, as if the last sentence of paragraph 6 read:

> Borrower further agrees that the issuer of such notes or securities or
> purchaser of any such participation interest may enforce its interest
> irrespective of any personal claims or defenses that Borrower may
> have against Lender, *[e]xcept for [Borrower's] liability claims based
> upon intentional misconduct of Lender.*

But the drafters did not include the intentional misconduct clause in this

sentence, and one cannot excise the clause from one sentence where it does

appear and append it onto another merely by wishful thinking. The court

must enforce the contract as made. And parol evidence is inadmissible to

vary the terms of an unambiguous contract. *See Coleman v. Holecek*, 542

F.2d 532, 535-36 (10th Cir. 1976); *Stauth v. Brown*, 241 Kan. 1 (1987)

(facts and circumstances existing prior to and contemporaneously with the

execution of an ambiguous, written agreement are admissible to clarify the

intent of that agreement.)

But even were the contract ambiguous, parol evidence cannot be

introduced to contradict, alter, or vary the terms of a written instrument.

*Barbara Oil Co. v. Kansas Gas Supply Corp.*, 250 Kan. 438, 452 (1992); *Life Ins. Co. of North America v. Centennial Life Ins. Co.*, 133 F.3d 932 (Table) (10th Cir. 1998). Admitting TST's suggested parol evidence would do just that.

Further, TST agreed in the loan documents that oral agreements could *not* modify the Loan Agreement. *See* Dk. 76, Exh. 3, p. 3 ("The Loan Documents may not be amended or modified by oral agreement."). TST additionally agreed that Aleritas had *not* made any oral promises or inducements to TST prior to or contemporaneously with the execution of the agreement, stating:

> No oral understandings, oral statements, oral promises or oral inducements exist. No representations, warranties, covenants or conditions, express or implied, whether by statute or otherwise, other than those set forth herein, have been made by the parties hereto. By signing below, Borrower and Lender affirm that no oral agreement between them exists.

Dkt. No. 76-4 at 12. Parol evidence is thus inadmissible. TST has thus failed to raise a genuine issue of material fact that any affirmative defense could defeat Wamego's counterclaim.

TST also contends that the contractual language provides a valid offset to damages. But TST has shown no rational basis for this assertion. Its claim of offset is based upon the same language addressed above in Paragraph 6 and fails for the same reasons set forth above.

## V. Recovery of Attorney Fees

Wamego seeks its attorney fees as part of the merits of its breach of contract counterclaim. The provision of the CLA upon which Wamego relies in seeking attorneys' fees states in relevant part:

> COLLECTION EXPENSES AND ATTORNEYS' FEES.
> To the extent permitted by law, Borrower agrees to pay all expenses of collection, enforcement and protection of Lender's rights and remedies [under] this Agreement. Expenses include, but are not limited to, reasonable attorneys' fees including attorney fees as permitted by the United States Bankruptcy Code, court costs and other legal expenses.

Dk. 76, Exh. 4, para. 34. Thus the fees are sought not as "costs," but as an element of compensatory damages flowing from TST's breach of contract. *See* Fed.R.Civ.P. 54(d)(2)(A) (recognizing this distinction).

### A. Fees Permitted by Law

The Court first addresses whether an award of attorneys' fees to Wamego in this case is "permitted by law," as the provision requires. This Court's subject matter jurisdiction is based on diversity jurisdiction. "[A] district court, sitting in diversity, must apply the substantive law of the state in which it sits … in resolving an attorney's fee issue in a contract suit." *Boyd Rosene & Assocs., Inc. v. Kan. Mun. Gas Agency,* 123 F.3d 1351, 1352 (10th Cir. 1997).

Kansas follows the American rule regarding recovery of attorneys' fees that 'in the absence of any contractual or statutory liability therefor, counsel fees and related expenses are not recoverable as an element of damages.' *Wilshire Oil Co. v. Riffe,* 409 F.2d 1277, 1285 (10th Cir. 1969). Thus a court

14

may not award attorney fees unless a statute authorizes the award or an agreement between the parties allows attorney fees. *Brennan v. Kunzle,* 37 Kan.App.2d 365, 392–93, 154 P.3d 1094, *rev. denied* 284 Kan. 945 (2007). Wamego relies on the CLA in seeking contractual attorneys' fees.

### B. Intended Beneficiary's Recovery of Contractual Fees

TST contends that an intended beneficiary has no right to recover attorneys' fees under a contract which was entered into between two other parties, since there was no meeting of the minds between them.

TST relies on Colorado law, citing *Intermountain Resources, L.L.C. v. Honea*, 68 Fed.Appx. 937, 938, 2003 WL 21470075, 1 (10th Cir. 2003), and *Parker v. Ctr. for Creative Leadership,* 15 P.3d 297, 299 (Colo.Ct.App. 2000). But the attorneys' fee clauses in those cases are factually distinguishable, and neither case establishes a *per se* rule against an intended beneficiary's recovery of contractual attorneys' fees. These and other cases properly focus upon the language of the attorneys' fee provision in question. *See e.g., Cargill, Inc. v. Souza*, 201 Cal.App.4th 962, 134 Cal.Rptr.3d 39 (2011) (finding third-party beneficiary entitled to contractual attorney fees where an intent to benefit it appeared from the terms of the contract); *Hub Elec. Co., Inc. v. Gust Const. Co., Inc.*, 585 F.2d 183 (6th Cir. 1978) (finding third-party beneficiary not entitled receive the benefit of all of the provisions of the original contract because it was not the "person for whose benefit (the attorney fees) promise [was] made by way of

15

contract . . . .," as the statute required, citing M.C.L.A. § 600.1405, M.S.A. § 27A.1405.).

Although Kansas has not addressed the specific issue of an intended beneficiary's recovery of contractual attorneys' fees, general principles apply.

> " 'To be a third party beneficiary to a contract, the contract must be made for the third party's benefit as its object, and he must be the party intended to be benefitted in order to be entitled to sue upon it. [Citation omitted.] The third party beneficiary can enforce the contract if he is one who the contracting parties intended should receive a direct benefit from the contract. Contracting parties are presumed to act for themselves and therefore an intent to benefit a third person must be clearly expressed in the contract. [Citation omitted.] It is not necessary, however, that the third party be the exclusive beneficiary of all the promisor's performance. The contract may also benefit the contracting parties as well. [Citations omitted.]' *Fasse,* 241 Kan. at 389."

*State ex rel. Stovall v. Reliance Ins. Co.,* 278 Kan. 777, 793-94 (2005). The Court will not infer a party's intention to waive the benefit of the American rule that a party is responsible for his own attorney's fees unless the intention to do so is clear from the language of the promise. But one's status as an intended beneficiary is not dispositive of the issue. Instead, a nonsignatory seeking relief as an intended beneficiary may recover attorney fees under a contractual fee provision if it appears that the contracting parties intended to extend such a right to one in his position.

### Fee Provision in CLA

The attorneys' fee provision on which Wamego relies states in relevant part: "[TST] agrees to pay all expenses of collection, enforcement and

protection of Lender's rights and remedies [under] this Agreement." Dk. 76, Exh. 4, para. 34. Significantly, this language does not state that TST will pay Aleritas only those attorneys' fees that Aleritas paid to protect its rights, or other language which would limit TST's duty to pay to only those attorneys' fees paid by the Lender itself. The fee provision does not express an intent to limit the payment of attorney fees to those incurred only by the signatories to the contract.

Instead, the signatories used broad language that obligates TST to pay all expenses of collection, enforcement and protection "of Lender's rights and remedies" under the Agreement. The parties did so, knowing that the same agreement gave third-party participants such as Wamego the right to enforce the Lender's rights and remedies under the Agreement, one of which is attorneys' fees. *See* Dk. 76, Exh. 4, para. 6. Wamego, as a third-party beneficiary and as administrator has brought this suit to enforce and protect the Lender's rights and remedies under the agreement. Therefore, according to the clear language of the agreement and the intention of the contracting parties, Wamego is entitled to its reasonable attorneys' fees.

### C. Motions to Strike Affidavits

Instead of providing detailed, contemporaneous time records to establish the reasonableness of their requested attorneys' fees, Wamego and Gibson have provided affidavits from several attorneys. TST moves to strike

17

these affidavits because of defendants' violations of Rule 26 with respect to these witnesses.

Specifically, TST moves to strike the affidavits of Nathan A. Orr and Bruce E. Baty filed in support of Wamego's fee request in Dk. 149. It is undisputed that attorneys' fees in this case are an element of damages in Wamego's counterclaim for breach of contract and that Wamego never listed these affiants as witnesses. Similarly, TST moves to strike in part the affidavit of Brian Wohler filed in support of Wamego's fee request because although Mr. Wohler was listed as a witness, the topic of attorneys' fees was not included. Further, TST has moved to strike the affidavit of Matthew W. Geary submitted in support of Gibson's fee request, because he was never listed as a witness. TST alleges that Wamego and Gibson have failed to comply with Rule 26, subjecting them to the sanctions of Rule 37. Wamego contends that Rule 26 does not apply to attorneys' fees.

Rule 26 of the Federal Rules of Civil Procedure provides, in pertinent part, that a party must disclose to the other party in advance of formal discovery:

> the name and, if known, the address and telephone number of each individual likely to have discoverable information— along with the subjects of that information—that the disclosing party may use to support its claims or defenses, unless the use would be solely for impeachment.

Fed.R.Civ.P. 26(a)(1)(A)(i). While a party is not required to provide a complete recitation of an individual's knowledge, Rule 26(a)(1)(A)

disclosures should indicate "briefly the general topics on which such persons have information." *See* Fed.R.Civ.P.26 (a)(1)(A) Adv. Comm. Notes (1993). Here, the parties expressly agreed as part of the scheduling order that documents falling under Rule 26 were to be affirmatively exchanged "without any need for formal requests for production." Scheduling Order Dk. 12, p. 4.

The mandatory disclosure requirements under Rule 26(a)(1) are designed to accelerate the exchange of basic information, to "help focus the discovery that is needed, and facilitate preparation for trial or settlement." *See* Fed.R.Civ.P. 26(a) Adv. Comm. Notes (1993). Thus "disclosure requirements should, in short, be applied with common sense" to help focus discovery and prevent the risk that litigants will "indulge in gamesmanship with respect to the[ir] disclosure obligations." *Robinson v. Champaign Unit 4 Sch. Dist.,* 412 F. App'x 873, 877 (7th Cir. 2011) (citing Fed.R.Civ.P. 26(a) Adv. Comm. Notes (1993)).

Rule 26 lists various proceedings that are exempt from initial disclosure, but attorneys' fees sought as damages are not among them. Nonetheless, Wamego claims that courts have repeatedly rejected the argument that attorneys should be included in Rule 26 disclosures as witnesses on the issue of attorneys' fees. Dk. 159, p. 1. The Tenth Circuit has not addressed this issue.

In support of that contention that it need not disclose in Rule 26 disclosures attorneys as witnesses on the issue of attorneys' fees, Wamego cites no cases from this jurisdiction, and fails to cite similar cases within the Tenth Circuit which reach the opposite conclusion. *See e.g., Deffenbaugh v. Winco Fireworks Intern., LLC*, 2008 WL 1995150, 1 (D.Kan. 2008) (affirming the magistrate judge's order compelling the plaintiff to provide her attorneys' fees to date as a part of her Rule 26 damages calculation and to provide all documents concerning plaintiff's damages and damage calculations); *Gustafson v. American Family Mut. Ins. Co.*, 2012 WL 5904048 (D.Colo., Nov. 26, 2012) (finding party's failure to disclose its intent to call a witness to testify about attorneys' fees prejudicial because it adversely impacted the opposing party's ability to conduct discovery in advance of trial; precluding that witness from testifying); *Tetra Technologies, Inc. v. Hamilton*, 2008 WL 3307150, 2 (W.D.Okla. 2008) (finding supplemental Rule 26 disclosures incomplete; requiring that "defendant must list witnesses and identify documents that may be used to support his counterclaims for various tort damages, including attorneys' fees.") The Court finds the above-cited cases, although not precedential, to be well-reasoned.

The Court recognizes that even if defendants' attorneys had been listed as witnesses at the start of this case, any reports would have contained little relevant information and would not represent the testimony,

if any, to be given at trial. "Unlike other types of expert testimony, any opinion offered as to the amount or reasonableness of the fees charged cannot be formed until the case is largely completed and those expenses have been incurred." *Tindall v. H & S Homes, LLC,* 2012 WL 3637745, 2-3 (M.D.Ga. 2012).[2] Nonetheless, the attorneys' fees were sought as an element of damages *ab initio*, and Wamego could have supplemented its disclosures in accordance with the rules. Defendants have not shown that witnesses on the issue of attorneys' fees as damages are exempt from Rule 26 disclosure requirements.

Nor have defendants challenged the facts which establish that they failed to disclose Brian Wohler, Nathan Orr, Bruce Baty, or Matthew Geary as witnesses regarding the issue of attorneys' fees. TST thus asserts that Rule 37 sanctions are warranted – specifically, that the court should preclude these witnesses from testifying about attorneys' fees.

A party's failure to comply with Rule 26(a) may subject him to the sanctions identified in Fed.R.Civ.P. 37(c)(1). Pursuant to Rule 37(c)(1),

> [i]f a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless.

Fed.R.Civ.P. 37(c)(1). Whether a violation of rule 26(a) is "substantially justified" or "harmless" is left to the broad discretion of the Court.

---

[2] The Court recognizes the general rule not to permit deposition discovery of attorneys regarding their fees, although the Court maintains discretion on this issue. *See* Newberg, *Attorney Fee Awards* § 2.22 (1986).

*Woodworker's Supply, Inc. v. Principal Mut. Life Ins. Co.*, 170 F.3d 985, 993

(10th Cir. 1999). The following factors guide this discretion:

> (1) the prejudice or surprise to the party against whom the testimony
> is offered; (2) the ability of the party to cure the prejudice; (3) the
> extent to which introducing such testimony would disrupt the trial; and
> (4) the moving party's bad faith or willfulness.

*Woodworker's Supply,* 170 F.3d at 993. Defendants have the burden to show

harmlessness or substantial justification in failing to comply with Rule

26(a)(1). *See Nguyen v. IBP, Inc.*, 162 FRD 675, 680 (D. Kan. 1995).

Defendants contend that their late disclosures create no unfair surprise

to TST because the issue of attorneys' fees as an element of breach-of-

contract damages was expressly contracted for in the Loan Agreement and

has been included in various documents filed throughout the course of this

litigation. But knowledge of a claim is not equivalent to knowledge of specific

witnesses and the scope of their knowledge. The failure to disclose witness

information may be harmless "if the other party was well aware of the

identity of the undisclosed witness and the scope of their relevant knowledge

well before trial." *Wilkins v. Kmart Corp.,* 487 F.Supp.2d 1216, 1224 (D.Kan.

2007). Nonetheless, TST's own attorneys knew of the scope of the litigation

and of the rates charged by themselves and likely by other attorneys in this

community, so could have estimated the amount of attorneys' fees damages

sufficiently to avoid unfair surprise.

Further, any violation of Rule 26 occurred early in the case. TST could

have timely cured the problem by bringing it to the attention of the

22

Magistrate Judge, who typically decides these issues, yet TST inexplicably delayed in raising this issue until these supplemental summary judgment motions.

The Court also finds that TST will not be prejudiced by any Rule 26 violation. TST asserts that even if defendants' non-disclosures were not in bad faith, they incurably prejudiced TST because it has had no opportunity to examine the bills, fee statements or other evidence relied upon by the attorneys in seeking fees, as needed to respond to Wamego's allegations of fact on this issue in its summary judgment motion.  But the burden to prove the reasonableness of attorneys' fees lies with defendants, as discussed below, not with TST. Because this issue is presented on a summary judgment motion and the determination of the amount of attorneys' fees is a matter for the court, the lack of supporting documentation works more prejudice to Wamego than to TST. And requiring defendants to provide the necessary details regarding their fees and permitting TST time to review those details now would not disrupt the proceedings, since no trial is imminent.

These factors, coupled with the absence of precedent on this issue, lead the Court to find that defendants' failure, if any, to comply with Rule 26 was substantially justified. TST's motion to strike shall therefore be denied.

### D. Standard of Proof for Contractual Attorneys' Fees

The Tenth Circuit has directed lower courts to apply a different standard in determining the amount of attorneys' fees based on contracts than in determining fees awarded pursuant to fee-shifting statutes. *See U.S. for Use of C.J.C., Inc. v. Western States Mechanical Contractors, Inc.*, 834 F.2d 1533, 1547 (10th Cir. 1987). There, the Tenth Circuit noted the "purpose of an award of attorneys' fees under the federal civil rights acts or other statutes is fundamentally different from the purpose of a contract for fees between parties in a commercial agreement." The court is to review the claim for fees consistent with the "purpose of the contract provision: to make the non-breaching party whole." *Id*.

> ... [W]here contracting parties have agreed that a breaching party will be liable for attorneys' fees, the purpose of the award is to give the parties the benefit of that bargain, and the court's responsibility is to enforce that bargain. (citation omitted.) Normally, where the court is merely enforcing a contractual provision authorizing attorneys' fees, the fees are routinely awarded and the contract is enforced according to its terms.

834 F.2d at 1548.

Although less scrutinization of the claim for fees is warranted in contractual fee cases, the court retains the authority to adjust fees. *Id.* The Tenth Circuit adopted the following standard for district courts to apply to claims for contractual attorneys' fees:

> Where attorney's fees are provided by contract, a trial court does not possess the same degree of equitable discretion to deny such fees as it has when applying a statute providing for a discretionary award." Of course, it may nevertheless, reduce the contractual attorney's fees

claimed if it finds such an award "would be inequitable and unreasonable."

… However, the trial court is not responsible for independently

calculating a "reasonable" fee.

*Id*, at 1549. To assist in its determination of unreasonableness, the court

may consult the traditional factors. *Id.* at 1550.

### E. Burden of Proof

Subsequent cases by the Tenth Circuit have clarified that a

determination of who bears the burden of proof for a contractual award of

attorneys' fees as damages should be determined by state law. *J.R. Simplot*

*v. Chevron Pipeline Co.,* 563 F.3d 1102, 1119 (10th Cir. 2009); *See Westar*

*Energy, Inc. v. Lake*, 552 F.3d 1215, 1227-28 (10th Cir. 2009). But the

Kansas Supreme Court has not ruled on this issue.

> The Kansas Supreme Court has not, however, addressed the specific
> question of who bears the burden of proof when a contract provides
> for the advancement of attorneys' fees and the payor disputes their
> reasonableness. Since the Kansas Supreme Court has not ruled on this
> issue, a federal court sitting in diversity must predict what the Kansas
> Supreme Court would do if faced with the issue. *Pompa v. Am. Family*
> *Mut. Ins. Co.,* 520 F.3d 1139, 1142 (10th Cir. 2008).

*Westar Energy*, 552 F.3d at 1228.

Where a contractual attorneys' fee provision has no reasonableness

limitation, *Western States* counsels the court to uphold the requested fees if

they are not inequitable or unreasonable. In those cases, the payor bears

the burden to show unreasonableness or inequitableness. *Westar Energy*,

552 F.3d at 1228.

But where the contractual attorneys' fee provision has a reasonableness limitation, the Tenth Circuit has held that "[t]he Kansas Supreme Court would instead most likely require the party seeking payment to justify the reasonableness of the fees by reference to Rule 1.5 of the Kansas Rules of Professional Conduct." *Westar Energy*, 552 F.3d at 1229. This is consistent with Kansas Court of Appeals cases which have examined fee-shifting contracts providing for "reasonable" attorneys' fees and held that the burden is on the person seeking the fees to show their entitlement to such an award. *See e.g., Martin Underground LLC v. Trinity Excavating & Const., Inc.,* 308 P.3d 31 (Table) (2013); *Midwest Asphalt Coating, Inc. v. Chelsea Plaza Homes, Inc.*, 45 Kan.App.2d 119, 122 (2010), citing *Estate of Bingham v. Nationwide Life Ins. Co.,* 7 Kan.App.2d 72, 80, (1981) (discussing statutory fee award), *aff'd as modified* 231 Kan. 389 (1982).

The contractual attorneys' fees provision in this case includes a reasonableness limitation by defining "expenses" to include "reasonable attorneys' fees." Accordingly, the burden to justify the reasonableness of the fees rests on defendants.

### F. Factors in Determining Reasonableness

Both the Tenth Circuit and the Kansas Supreme Court have directed district courts to consider the factors in Rule 1.5(a) (2012 Kan. Ct. R. Annot. 492) of the Kansas Rules of Professional Conduct in determining the

reasonableness of a fee. See *Westar Energy*, 552 F.3d at 1229; *City of Wichita v. BG Products Inc.*, 252 Kan. 367, 374 (1993). That rule states:

> (a) A lawyer's fee shall be reasonable. The factors to be considered in determining the reasonableness of a fee include the following:
>
> (1) the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly;
>
> (2) the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer;
>
> (3) the fee customarily charged in the locality for similar legal services;
>
> (4) the amount involved and the results obtained;
>
> (5) the time limitations imposed by the client or by the circumstances;
>
> (6) the nature and length of the professional relationship with the client;
>
> (7) the experience, reputation, and ability of the lawyer or lawyers performing the services; and
>
> (8) whether the fee is fixed or contingent.

## G. Lack of Billing Records

As noted above, defendants have not included any time records or other detailed documents in support of its fee request. Instead, the record includes only affidavits.

It is well established that a party seeking attorneys' fees must introduce detailed, contemporaneous time records to establish the reasonableness of the requested amount. *Case v. Unified Sch. Dist. No. 233,*

27

*Johnson Cnty.,* 157 F.3d 1243, 1250 (10th Cir. 1998) (examining statutory fee provision).

> Counsel for the party claiming the fees has the burden of proving hours to the district court by submitting meticulous, contemporaneous time records that reveal, for each lawyer for whom fees are sought, all hours for which compensation is requested and how those hours were allotted to specific tasks.

*Case*, 157 F.3d at 1250. Under Kansas law, as well as under federal law, "fees which are not supported by 'meticulous, contemporaneous time records' that show the specific tasks being billed should not be allowed." *Davis v. Miller*, 269 Kan. 732, 748 (2000) (examining contractual fee provision), *citing Case*, 157 F.3d at 1250.

Without such documentation, the Court is unable to review the actual hours expended by specific counsel on various tasks to determine which of those hours were reasonably expended in the litigation, and to examine the potential duplication of services. These tasks are among those traditionally undertaken by the Court in reviewing attorneys' fees requests. See *Ramos v. Lamm*, 713 F.2d 546, 553-54 (10th Cir. 1983); *Jane L. v. Bangerter,* 61 F.3d 1505, 1510 (10th Cir. 1995).

Although a mere affidavit on this issue may at times be found sufficient, it is not the "required practice." *Wells Fargo Bank, N.A. v. LaSalle Bank Nat. Ass'n*, 2011 WL 3739170, 7 (W.D.Okla. 2011) (finding attorney's affidavit insufficient to rule on its sought-for recovery of fees where the

attorneys' fees are likely to be the bulk of the damages awarded and both parties had "shown a propensity for extraneous and loquacious filings."); *See In re Nelson*, 335 B.R. 740, 753 (Bkrtcy.D.Kan. 2004) (finding a party's testimony that he spent a great deal of time on a matter insufficient to meet his burden to prove damages with reasonable certainty, where he offered no time records or evidence of the value of his time); *Cf, Olson v. Coleman*, 1993 WL 408330 (D.Kan. 1993) (finding from the affidavits attached to defendant's motions of that "the amount of attorneys' fees for which they seek allowance are reasonable, sufficiently documented and appropriate," but the amount of fees (less than $4,500 in fees associated with an appeal) was not challenged by the plaintiff; *Guidance Endodontics, LLC v. Dentsply Intern., Inc.,* 708 F.Supp.2d 1209 (D.N.M. 2010) (finding defense attorney's affidavit "sufficient evidence to raise a genuine issue of material fact regarding the Defendants' attorneys' fees.").

And here, the affidavits are quite insufficient to give the court the information it needs to accomplish its task. For example, instead of setting forth the hourly rates charged by each attorney, paralegal, or other employee who worked on this case, and the time spent on each task by each person, the affidavits state: "As of September 30, 2013, Spencer Fane had spent 565.3 hours on [Wamego's representation in this case] and charged fees of $160,334.00 for that work, yielding a blended hourly rate of $283.63." Dk. 149, Exh. 2. See Dk. 149, Exh. 3 (Denton law firm's similar

statement for Wamego fees, revealing no hourly rates other than a "blended hourly rate."); Dk. 151 (Dysart Taylor law firm's similar statement for Gibson's fees, revealing no hourly rates other than a "blended hourly rate."). The affidavits are not sufficiently specific to make up for the lack of accompanying documentation.

None of the affidavits asserts that any law firm negotiated a blended rate at the outset of the litigation or that either defendant agreed to a particular blended rate that was charged by all "professionals" who worked on the case, regardless of the attorney's level of experience or area of expertise and regardless of whether the work was performed by a paralegal or by a partner. To the contrary, each affidavit avers that "fees for this matter were based on fixed hourly rates…" Dk. 149, Exh. 2, p. 3 Dk. 149, Exh. 3, p. 3 ("fees for this matter were based on the hourly rates of the professionals involved …"); Dk. 151, Exh. A, p. 3 ("fees for this matter were based on the hourly rates of the professionals involved."). Accordingly, these defendants did not enter into agreements for blended fees. Instead, it appears that in support of its fee applications, counsel merely divided the total fees charged to its client by the total hours recorded on this case, then revealed to this court the product which it refers to as a "blended hourly rate." The fixed hourly rates charged to defendants' clients have not been revealed.

The affidavits are insufficient to justify any fee award. They are sufficient, however, to raise a material question of fact regarding the amount of fees defendants are entitled to recover. Accordingly, the Court denies the summary judgment motion on the issue of attorneys' fees. The parties shall confer regarding the amount of attorneys' fees and if no agreement can be reached, the court will establish a briefing schedule on this issue.[3]

### H. Recovery for Other Participants

TST additionally alleges that Wamego has no right to recover fees incurred for its representation of other participants. Wohler's affidavit implies that Wamego incurred attorneys' fees to protect the interests of participants other than Wamego, by stating that his duties include:

> retaining and paying attorneys to collect TST's loan, to enforce TST's obligations relating to its loan, and to protect the interests of Wamego *and other lenders* that purchased participatory interests in TST's loan.

(Dk. 149, Exh. 1) (emphasis added). Similarly, the affidavits of the Wamego attorneys who performed the work for which fees are currently sought state that they were retained "to help Wamego and other lenders protect their interests" in the loan. See Dk. 149, Exh. 2 (Orr avers that Wamego retained Spencer Fane "to help Wamego and other lenders protect their interests" in the loan); Dk. 149, Exh. 3 (Baty avers that Wamego retained Dentons US LLP "to help Wamego and other lenders protect their interests" in the loan).

---

[3] The Court would ordinarily set down for trial any issue not resolved on opposing summary judgment motions, but the amount of attorneys' fees is a matter for the court's determination and no bench trial is necessary.

Given the Court's decision that Wamego is acting as administrator in protecting the interests of the Lender, TST has failed to raise a material question of fact as to why Wamego should not recover reasonable fees, if properly documented, for its representation of other participants.

IT IS THEREFORE ORDERED that defendants' motions for summary judgment (Dks. 75 and 95) are granted in part and denied in part in accordance with the terms of this memorandum and order. Plaintiffs' motions for summary judgment (Dk. 73 & 97) are denied.

IT IS FURTHER ORDERED that the parties shall confer regarding the amount of reasonable attorneys' fees owed to Wamego and Gibson, and shall notify the Court by April 10th, 2014, whether or not an agreement has been reached. If no agreement can be reached, the court will subsequently establish a briefing schedule on this issue.

IT IS FURTHER ORDERED that Plaintiffs' motions to strike (Dks. 154 and 156) are denied.

Dated this 18th  day of March, 2014, at Topeka, Kansas.

s/Sam A. Crow
Sam A. Crow, U.S. District Senior Judge