IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

TRI-STATE TRUCK INSURANCE, LTD.,
TST, LTD., and ANDREW B. AUDET,

          Plaintiffs,

v.                                              No. 09-4158-SAC

BANK OF THE FLINT HILLS, et al,[1]

          Defendants.

MEMORANDUM AND ORDER

This case comes before the Court on TST's motion (Dk. 179) to alter or amend judgment, and on the issue of attorneys' fees (Dk. 171, 174).

**I. Motion to Alter or Amend**

To prevail on this motion, TST must establish either "(1) an intervening change in the controlling law, (2) new evidence previously unavailable, [or] (3) the need to correct clear error or prevent manifest injustice." *Servants of the Paraclete v. Does*, 204 F.3d 1005, 1012 (10th Cir. 2000). TST asserts the latter.

"A Rule 59(e) motion ... is designed to permit relief in extraordinary circumstances and not to offer a second bite at the proverbial apple." *Syntroleum Corp. v. Fletcher Int'l, Ltd.*, 2009 WL 761322 (N.D.Okla. Mar. 19, 2009). Such a motion does not permit a losing party to rehash

---

[1] The Court refers to the Defendants collectively as "Flint Hills" for purposes of convenience, except when necessary to distinguish between them. See Dk. 192 (agreed order revising caption).

arguments previously addressed or to present new legal theories or facts that could have been raised earlier. *Brown v. Presbyterian Healthcare Servs.,* 101 F.3d 1324, 1332 (10th Cir. 1996), *cert. denied,* 520 U.S. 1181 (1997). Yet that is precisely what TST does in this motion.

After reviewing the arguments presented by TST in support of the motion, the Court finds that TST's motion is premised on its disagreement with the court's previous findings and interpretation, application, and conclusions of law. TST has demonstrated no reason for the Court to alter or amend its judgment or to make additional findings or rulings. Because the parties have repeatedly demonstrated their penchant for construing language in sharply conflicting ways, the Court believes that an economy of words is appropriate. Therefore, for the reasons stated by the Court in its prior rulings (Dk. 176, 166) as well as those stated in Flint Hills' brief (Dk. 186), the Court finds no basis for granting this motion.

## II. Attorneys' Fees

The Court's order dated March 18, 2014 (Dk. 166) required the parties to confer regarding the amount of reasonable attorneys' fees TST owes to Flint Hills and Gibson, and to notify the Court by a specified date whether or not an agreement had been reached. The parties were unable to reach an agreement on fees so the court established a briefing schedule, and the issue is now ripe for decision. The parties are familiar with the prior decisions in this case and the underlying facts. Further, the Court has

previously addressed the legal standard, the burden of proof, and the factors in determining the reasonableness of fess, so will not repeat those herein.

Flint Hills seeks its attorney fees as part of the merits of its breach of contract counterclaim. The provision of the CLA upon which Flint Hills relies in seeking attorneys' fees states in relevant part:

> COLLECTION EXPENSES AND ATTORNEYS' FEES.
> To the extent permitted by law, Borrower agrees to pay all expenses of collection, enforcement and protection of Lender's rights and remedies [under] this Agreement. Expenses include, but are not limited to, reasonable attorneys' fees including attorney fees as permitted by the United States Bankruptcy Code, court costs and other legal expenses.

Dk. 76, Exh. 4, para. 34.

### A. Flint Hills' Fees

TST does not generally challenge the reasonableness of the hourly rates Flint Hills' attorneys charged, the adequacy of the billing records (with some exceptions noted below), or its duty to pay interest on the expenses Flint Hills incurred as a result of this dispute.

#### 1. Pennsylvania Cases

TST contends that White's fees, portions of Denton's fees, and portions of Spencer Fane's fees are unreasonable because they are attributable to unsuccessful legal work on related Pennsylvania cases. But TST does not contend that those fees were not "expenses of collection, enforcement and protection of Lender's rights and remedies" under the Loan Agreement.[2]

---

[2] Because TST does not base its objection on the fact that fees were incurred in separate cases, the Court does not examine this issue.

### a. Reasonableness

TST contends that Flint Hills' attorneys' fees for its unsuccessful litigation in two Pennsylvania cases are unreasonable. In Bucks County case No. 2009-10141-35, Flint Hills moved to intervene, filed a motion to strike or open the default judgment, prepared a praecipe, and prepared a petition seeking relief from the default judgment. None of those efforts succeeded. Flint Hills also filed a separate Pennsylvania case against TST, a "complaint in equity," which the court dismissed because Flint Hills failed to prosecute it. (Bucks County case No. 2011-08872).

In support of its position that fees should be reduced to account for unsuccessful efforts, TST cites § 1988 cases which award fees to "prevailing parties." *See* Dk. 177, p. 9. Although fees in this case are not pursuant to a fee-shifting statute or any "prevailing party" language, the "results obtained" are a relevant factor in determining the reasonableness of fees in this case. *See U.S. for Use of C.J.C., Inc. v. Western States Mechanical Contractors*, Inc., 834 F.2d 1533, 1547, 49 (10th Cir. 1987).

Flint Hills asserts that it obtained "relief" from the Pennsylvania court. But the "favorable ruling" Flint Hills references is premised on this finding by Judge Baldi: "Flint Hills has failed to demonstrate at this juncture to this Court the factual basis for its argument that the judgment against either defendants would impose liability upon Flint Hills, or affect its own legally enforceable interest in TST's loan." Dk. 76-24 p. 6. This and other language

in Judge Baldi's decision reflects Flint Hills' failure to meet its burden of proof, rather than the affirmative finding on the merits sought by Flint Hills that the Pennsylvania judgment could not possibly affect Flint Hills' interest in the loan. *See e.g.,* Dk. 76-24, p. 4 (finding, "[t]his Court has not entered any Order regarding Flint Hills' rights, duties, or obligations with regard to commercial Loan Nos. 5483 or 5484. It is unclear from the evidentiary record before this Court if Flint Hills has an ownership interest or other interest in Loan Nos. 5483 and 5484."). Judge Baldi ultimately denied Flint Hills' motion to intervene because that motion was untimely and because Flint Hills failed to show that it had any dog in the fight. Dk. 76-24, pp. 5, 6.

Flint Hills also seeks fees for filing a separate action in Pennsylvania against TST, Bucks County case No. 2011-08872. But Flint Hills did not pursue that case so after two years of inactivity the Court dismissed it for failure to prosecute. Flint Hills has shown no reason why it should recover fees in this case for that abandoned proceeding. The Court finds that Flint Hills has not shown that it should recover fees in this case from its efforts in the Pennsylvania litigations, where its efforts to protect the Lender's rights and remedies consisted largely of filing a motion to intervene that was untimely filed and procedurally insufficient, and of filing a lawsuit that was dismissed for lack of prosecution. Although the cases are related, the reasonableness of those particular actions has not been shown.

Flint Hills urges this Court to focus instead on the overall results that Flint Hills ultimately obtained in this case, but that outcome, as found the Tenth Circuit and by this Court on remand, is based on the premise that the Pennsylvania action had *no* impact on the litigation in this court between these parties. In fact, Flint Hills' success on its summary judgment motion in this case would have been surer, swifter, and simpler had it *not* engaged in litigation in Pennsylvania. Flint Hills' assertion that its efforts in Pennsylvania yielded an ultimate victory or substantially advanced its interests in this case is thus not well taken. Accordingly, the Court will reduce Flint Hills' attorneys' fees by the amounts incurred in litigating the Pennsylvania actions.

### b. Amount

Flint Hills' sole challenge to the amount of $180,481.75 incurred in the Pennsylvania actions is to state that some of the fees included therein "relate to" the present action, so TST cannot justify any reduction in fees on that basis. But the burden to prove the reasonableness of fees rests on Flint Hills. Flint Hills does not state what amount of fees included in TST's calculation it believes "relate to" this case, nor does it specify any relevant invoices or entries. Flint Hills does not clarify how any Pennsylvania fees "relate to" this case, or whether it believes that some fees incurred solely in this case were erroneously included in the calculation.

Nor are the invoices a model of clarity. Denton's and Spencer Fane's invoices do not separately identify their work on the unsuccessful Pennsylvania litigations by reference to case names or numbers, and often combine that work with other matters. *See e.g.*, Dk. 171, Exh. 3, p. 20 (Spencer Fane entry on 9/22/11, $1207.50, including "petition to intervene" and the Pennsylvania "independent action in equity"). In many cases, the invoices reflect block billing of large amounts of time including multiple tasks, some apparently incurred in the present case and some in the Pennsylvania cases. *See e.g.*, *id*, p. 19 (Spencer Fane entry on 9/20/11, 6.8 hours, $1,666.00, including work on Pennsylvania cases and Equitable Bank intervention). Additionally, many entries are redacted to such an extent that the Court cannot tell what work the attorney performed or in which case. *See e.g.*, id, p. 37 (Spencer Fane entry on 1/13/12 178.50, stating: "Finish analyzing grounds for ***** evaluate***** and related issues of appellate strategy.") The Court construes any ambiguity against the claimant.

Accordingly, the Court finds that Flint Hills has not met its burden to show that the following fees incurred in the Pennsylvania litigations are reasonable: White and Williams LLP's fees in the amount of $62,140.50; Denton's fees in the amount of $93,341.25; and Spencer Fane's fees in the amount of $25,000. Accordingly, the Court shall reduce Flint Hills' fees by $180,481.75.

**2. Duplicative Work**

Next, TST contends that Flint Hills' current law firm (Spencer Fane) engaged in "significant duplication of efforts" when it replaced Flint Hills' previous law firm (Denton) after the Court issued its initial summary judgment order in this case in August of 2011. *See* Dk. 177 at 6–7. TST asks the Court to reduce the fee request by $30,665.98, the amount of Spencer Fane's invoices for its work in August 2011 when it entered this case, since that work was only to familiarize itself with this case, which Denton had previously done.

Flint Hills responds that when it retained Spencer Fane, more than half a year had passed since Denton had performed any work on this action, so even had Flint Hills kept the same firm, its attorneys would have had to review the proceedings to refresh their memories. Dk. 181, p. 7-8. But a review by counsel who has represented a party in the case is not as time consuming as gaining an initial grasp of the issues, proceedings, and status of the case. To this Flint Hills avers that Spencer Fane was already familiar with "much of this litigation" when hired because it had represented other lenders in similar disputes. Flint Hills also shows the Court that the challenged invoices reflect tasks that Denton did not perform and could not have performed, because they resulted from the Court's summary judgment decision, issued after Denton stopped working on the case.

The Court agrees that no unnecessary duplication of tasks or double billing has been shown. Even assuming that Spencer Fane spent some more time in August than Denton might have had it remained counsel for Flint Hills, the court is not willing to penalize the client for its decision to retain new counsel, where the new counsel's fees were reasonable under the circumstances.

### 3. Equitable Bank's Failed Intervention

TST contends that over $4,000 of Spencer Fane's fees are unreasonable because Flint Hills paid them on behalf of Equitable Bank, another participating lender, who unsuccessfully sought to intervene in this case. This Court denied Equitable Bank's motion to intervene as untimely and for its non-compliance with Rule 24(c). Equitable Bank appealed that decision, then dismissed that appeal.

Flint Hills does not challenge this amount, but replies solely that no reduction should be made because this failed motion to intervene was "part of a strategy that ultimately succeeded." Dk. 181, p. 11. But Flint Hills fails to show the Court how filing an untimely and unmeritorious motion to intervene on behalf of another participant was strategic in advancing its own interests, or how the denial of Equitable Bank's motion contributed in any way to Flint Hills' ultimate success on the merits of the case. Neither this Court nor the Tenth Circuit found Equitable Bank's presence or absence to be relevant. Accordingly, a reduction in the amount of $4000 is warranted.

### 4. Audet's Loan

Finally, TST contends that Flint Hills is not entitled to its attorneys' fees for work on Audet's loan, because Flint Hills did not prevail as to that loan. Flint Hills lost its summary judgment motion regarding the Audet loan and the Tenth Circuit affirmed that ruling. TST seeks an overall fee reduction of 10% to reflect the degree of Flint Hills' overall success in the matter. That percentage is in accordance with the Tenth Circuit's reduction of Flint Hills' costs on appeal by 10% to account for its lack of success on appeal.

Flint Hills asserts that the 10% reduction of costs on appeal was in accordance with FRAP 39(a), and that this rule "indicates that costs should be allocated in accordance with the outcome of an appeal." Dk. 181, p. 11. Contrary to Flint Hills' assertion, the Rule does not limit the court to consider only the degree of success on appeal, or even include that as a factor to be considered. The rule merely states in relevant part that "if a judgment is affirmed in part [and] reversed in part … costs are taxed only as the court orders." And that rule is inapplicable here.

Flint Hills also faults TST for not identifying any records of Flint Hills' work on Audet's loan, but this is likely because the attorneys' invoices lack sufficient specificity on this and other matters. The burden to show the reasonableness of fees incurred in litigating the Audet loan, and the duty to submit meticulous, contemporaneous time records revealing how the lawyer's hours were allotted to specific tasks rests on Flint Hills, not on TST.

10

Flint Hills bears the burden to show that it would have incurred the same amount of fees in this case, absent Audet's loan. Any tacit assertion that Flint Hills spent no time or effort on Audet's loan is unsupportable, given the Tenth Circuit's ruling which underscores the fact that the terms of the Audet loan are different from the other loan and warrant a separate analysis.

Because the lack of specificity of the fee records precludes an exact calculation, the Court agrees that a 10% reduction accurately reflects the results obtained, so shall make the same percentage reduction made by the Tenth Circuit.

### 5. Amount of Work

TST notes that this case did not involve a jury trial, retained experts, or multiple depositions, and that the overall amount of fees is thus unreasonable. Flint Hills counters that this case necessitated extensive briefing on relatively complex issues and novel theories and that analyzing those matters correctly and articulating that analysis clearly justified the time spent. The Court has reviewed the hours spent on this case and finds them to be reasonable except as noted above.

### 6. Fixed v. Contingent

Flint Hills alleges that the reasonableness of its fees is shown because its fee request is merely approximately one-sixth of the amount to which its attorneys would have been entitled had their fees been contingent. Dk. 171,

p. 14. Fees in the amount of six times those being sought by Flint Hills would truly shock the conscience of the Court.

Flint Hills' analysis misconstrues the purpose of this factor. Flint Hills' comparison, made with the benefit of hindsight, presumes that its client would have agreed to a contingency fee in this case, that its firm would have undertaken the risk of recovering no fees by taking the case on a contingency fee, and that the course of litigation would have been pursued identically, had a contingency fee existed. Such a retrospective assuption is neither accurate nor useful. This factor is more appropriate where the case has been conducted pursuant to a contingent fee agreement. *See e.g., Edwards & Associates, Inc. v. Black & Veatch, L.L.P.*, 2001 WL 1718101, 5 (D.Kan. 2001) (finding the fee was a blended hourly/contingency fee agreement, which provided both sides with some risks and some benefits*); In re Qwest Communications Intern., Inc. Securities Litigation*, 625 F.Supp.2d 1143, 1151 (D.Colo. 2009) ("A contingent fee, and the potential for a relatively high fee, is designed to reward counsel for taking the risk of prosecuting a case without payment during the litigation, and the risk that the litigation may be unsuccessful.") This factor does not weigh in Flint Hills' favor.

The Court finds that the remaining factors under Rule 1.5(a) do not warrant either a reduction to or an increase in the fees sought by Flint Hills.

### B. Flint Hills' Supplemental Fees

Flint Hills asks the Court to award attorneys' fees that it reasonably incurred in preparing its briefs and exhibits seeking fees, and in responding to TST's motion to alter and amend. Flint Hills has supported its fee request with itemized statements, and it is well established that such fees are compensable. Accordingly, those fees shall be allowed without a 10% reduction, in the amount requested of $20,473.00.

### C. Gibson's Fees

Gibson seeks $26,367.00 in attorneys' fees, $384.36 in expenses, and $4,003.01 in interest through May 12, 2014. TST's underlying objection is that Gibson had no need to intervene in this action so should recover no fees, expenses, or interest.

TST first asserts that Gibson has the burden to prove that its firm, Dysart Taylor, made a "distinct contribution" to the case on its behalf, over and above the representation provided by Flint Hills' lawyers. But precedent does not require a "direct contribution." Contrary to TST's representations, that language is from an 11th Circuit case, not a 10th Circuit case. *See* Dk. 178 at 4 (quoting the "Tenth Circuit" case of *Johnson v. Univ. College of Univ. of Ala.*, 706 F.2d 1205, 1208 (11th Cir. 1983)); *Id*, at 5, 8, 11 (alluding to *Johnson* or its language regarding a "distinct contribution" of each attorney). And TST shows the Court no such language in the Tenth Circuit's analysis of attorneys' fees issues.

TST fails to show the Court that any hours claimed by counsel for Gibson were unnecessary, irrelevant, or duplicative. Further, Gibson shows the Court that it reasonably believed that its intervention in this case was necessary to protect its interest, given TST's repeated assertions in this case that Flint Hills could not represent any other loan participants, including Gibson. *See e.g.*, Dk. 155, p. 18-19; Dk. 180, p. 7.

TST next contends that Gibson has made "no substantive filings in the case," Dk. 178, p. 2, and that its involvement in the case was "mere surplusage." *Id*, at 6. But the Court appreciates that Gibson litigated the case efficiently and avoided unnecessary expense by, on many occasions, incorporating Flint Hills' briefs - doing only what was necessary to preserve its position without belaboring the issues. The record reflects efficient cooperation, rather than redundancy, between the defendants throughout the case. Gibson was not unreasonably doing the same work as was Flint Hills.

TST also asserts that Gibson was unreasonable in selecting different counsel than Flint Hills before Gibson retained the same counsel for some post-judgment and appellate proceedings. But separate parties often warrant separate counsel because the parties' interests are not coextensive. Such is the case here, where Flint Hills was not only a participant in the loan but also the servicer of the loan, unlike Gibson. Although some fees could perhaps have been avoided if Gibson and Flint Hills had shared counsel, the

14

Court finds that this savings is outweighed by Gibson's interest in choosing its own counsel, who had represented Gibson in other legal matters for more than 15 years.

TST also contends that the "monitoring" of cases required no expertise so should have been done by associates instead of by partners. But that would have required the associates to confer with partners, or partners to review the same matters previously reviewed by the associates before proceeding with the substantive aspects of the case. The Court believes this decision was well within the discretion of the attorneys to make and that their decision was reasonable. Accordingly, Gibson shall be awarded its fees, as requested: $26,367.00 in fees, $384.36 in expenses, and $4,003.01 in interest to 5/12/14.

### D. Interest on Attorneys' Fees

TST does not dispute that it agreed to pay interest on Flint Hills' attorneys' fees. *See* Dkt. No. 177 at 15. Nor does TST dispute the accuracy of Flint Hills' calculation of that interest at the rate of 7.75% per 365 days until paid in full. *See id.* Accordingly, interest at that rate on the attorneys' fees awarded by the Court shall be ordered.

## III. Future Damages

Flint Hills also seeks fees that it "reasonably incurs after June 15, 2014 in connection with TST's loan and accrued interest on those fees." But those fees are yet to be incurred in this case and their amount cannot presently be

15

shown to a reasonable degree of certainty, as is necessary. Accordingly, as to any future attorneys' fees or interest thereon incurred by Flint Hills or Gibson, all parties are ordered to meet and confer to review the documents that show those damages with reasonable certainty. In the event no resolution can be reached, the party seeking such damages shall so notify the court. Accordingly, this court shall retain jurisdiction over the case for a time to determine a party's entitlement to and amount of future damages.

**IV. Total Damages**

Flint Hills has calculated its total damages and, except for those matters addressed above, TST has stated no objection to them. Therefore, in accordance with this order and its previous orders, the Court finds the following damages have been shown as a matter of law and hereby orders TST to pay the following amounts:

| | |
|---|---|
| Principal amount - | $6,761,434.62 |
| Interest on the principal amount at the rate of from November 16, 2009, until paid in full. | $1,435.65 per day |
| Flint Hills' Costs | $1,151.28 |
| Gibson's Expenses | $384.36 |
| Gibson's Attorneys' fees through 5/12/14: | $26,367.00 |
| Flint Hills' Attorneys' fees through 4/30/14: | $262,172.48 |

$475,784.50 sought
-180,481.75 (Pa. litigation)

    <u>- 4,000.00</u> (Equitable Bank intervention)

    $291,302.75
    <u>-   29,130.27</u> (Audet 10%)
    $262,172.48 awarded

Flint Hills' Supplemental Attorneys' fees        $20,473.00
    from May 1, 2014 - June 15, 2014:

Interest on all attorneys' fees at the rate of 7.75% per 365 days
    from the date such fees were paid until paid in full.

    IT IS THEREFORE ORDERED that plaintiff's motion to alter or amend (Dk. 179) is denied.

    IT IS FURTHER ORDERED that attorneys' fees and other damages (Dk. 171, 174) are hereby awarded to Flint Hills and to Gibson in accordance with the terms of this memorandum and order.

    The Court shall retain jurisdiction over the case until February 6, 2015, to determine a party's entitlement to and amount of future damages.

    Dated this 5th day of August, 2014, at Topeka, Kansas.


                                  <u>s/Sam A. Crow</u>
                                  Sam A. Crow, U.S. District Senior Judge